HASBROUCK & McCULLOCH v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

**Telegram:** CONSTRUCTION OF. A telegram from an agent to his principal was worded "Has stock, $1,200. Mortgage on $1,500. Am offered note with H. as security for $2,500 in full settlement. Shall I accept?" It was mistakenly sent thus: "Have secured $1,200, mortgage on $1,500 and am offered notes for $2,400 with H. as security, shall I accept?" The following answer was sent: "If $1,200 mortgage is on $1,500 property, accept." The agent settled for the note of $2,500 alone, thus taking $1,100 less than a $1,200 mortgage and a $2,400 note. *Held*, the agent was justified in so settling unless the debtor was better off than one who has a $1,200 mortgage on a $1,500 stock, and in construing the answer to authorize a settlement.

INJURIOUS SETTLEMENT: *Remedies*. A principal received an erroneous telegram from his agent, which he thought of doubtful meaning. The company's agent informed him that it had been repeated, and that it was correct; and the principal then acted on the telegram as he understood it. *Held*, that he was not guilty of contributory negligence, as a matter of law.

*Same*. Where a principal authorized his agent to settle a claim against his debtor, because of a telegram, the terms of which the telegraph company changed in transmission, and the agent settled before the mistake was discovered, the principal is not bound to rescind the settlement before proceeding against the company for damages.

EVIDENCE: *Intent*. Where a principal wired his agent to settle a claim, because of a message he received from him which was changed in transmission, it was not error to permit the principal to testify in an action against the telegraph company for the loss sustained by reason of a settlement, that, if the message had been delivered as sent, he would not have authorized settlement.

Instructions:  *Harmless error.*  Where telegrams confer authority on an agent to act as he did, as a matter of law, it was not prejudicial error to submit that issue to the jury, where it must have so found in rendering the verdict it did.

Same.  On an issue as to whether an agent was authorized to make a settlement by a telegram received from his principal, an instruction that the agent's failure to follow the strict letter of his authority as contained in the message would be immaterial, unless his departure occasioned the loss complained of, was not error.

Same.  Erroneous statements in instructions submitting the issue, as to whether certain telegrams conferred authority on an agent to act as he did, to the jury, when the telegrams conferred such authority as a matter of law, are without prejudice, where the verdict was in accord with such interpretation.

Practice:  requesting instructions.  Where evidence is admissible for a particular purpose, appellant cannot object on appeal to the court's failure to limit its consideration to such purpose, if it was not requested so to do, and no error was assigned for such failure.

*Appeal from Wayne District Court.*—Hon. H. M. Towner, Judge.

Wednesday, January 18, 1899.

The plaintiff firm is doing a banking business at Humeston, Iowa.  It held a note for three thousand six hundred dollars against W. H. Henderson of Fairfield, Iowa. About September 4, 1895, it sent its agent (one R. C. Poston) to Fairfield to settle and adjust the claim with Henderson. On September 4th, Poston delivered to the defendant's agent at Fairfield a telegram as follows: "Fairfield, Iowa, September 4, 1895.  To Hasbrouck & McCulloch, Humeston, Iowa:  Has stock twelve hundred dollars.  Mortgage on for fifteen hundred dollars.  Am offered note, with Harkness as surety, for twenty-five hundred dollars due in eighteen months, in full settlement.  Shall I accept? Answer quick, care Leggett House, R. C. Poston."  The message as delivered to plaintiff was as follows: "Fairfield, Ia., Sept. 4, 1895.  To Hasbrouck & McCulloch, Humeston, Iowa:  Have secured twelve hundred dollar mortgage on fifteen hundred dollars and offered note, with Harkness as

Vol. 107 Ia—11

surety, for twenty-four hundred dollars, due in eighteen months, in full settlement. Shall I accept? Answer quick, care Leggett House. R. C. Poston." To the message as received the plaintiff sent the following answer: "Humeston, Iowa, September 5, 1895. To R. C. Poston, Care of Leggett House, Fairfield, Iowa: If twelve hundred dollar mortgage is on fifteen hundred dollar property accept. Hasbrouck & McCulloch." On receipt of the telegram, Poston settled with Henderson, taking his note for two thousand five hundred dollars, with Harkness as surety. The averments of the petition make it appear that the telegram plaintiff received meant "a mortgage to plaintiff for twelve hundred dollars on Henderson's stock, and also a note of said Henderson for twenty-four hundred dollars more, with said Harkness as surety on the said note," instead of which Poston settled for Henderson's note for two thousand five hundred dollars, with Harkness as surety, making a loss to plaintiff of one thousand one hundred dollars, for which it asks judgment. The answer makes some admissions and denials, and pleads affirmative defenses, that will be noticed, so far as necessary, in the opinion. The cause was tried to a jury, that returned a verdict for plaintiff, and from a judgment thereon the defendant appealed.—*Affirmed.*

*McNett & Tisdale* and *Geo. H. Fearons* for appellant.

*Miles & Steele* for appellee.

GRANGER, J.—I. It is not contended that, independent of the telegraphic correspondence, Poston had authority to make the settlement; and the first proposition argued is this: "Did the dispatch written at Fairfield, taken in connection with the reply which Poston received thereto, constitute apparent authority on his part to effect the settlement which he did, or was he justified in drawing that conclusion?" It seems to us that the proposition is very fairly stated to test the legal question involved. It probably will not be disputed

that there must have been a binding settlement with Henderson, before damages legally accrued to plaintiff; and a binding settlement, as to plaintiff, could only arise from such a delegation of authority as that, in the exercise of it, he would be bound.   Appellant argues the question on the theory that Poston had the right to consider the answer to his dispatch on the assumption that his dispatch to plaintiff was correctly transmitted, and we think the method of reasoning correct.   Appellant then takes this position:   The Poston dispatch notified plaintiff that there was a stock worth one thousand two hundred dollars, on which there was a one thousand five hundred dollar mortgage, and a secured note for two thousand five hundred dollars was offered in settlement.   The answer was:   "If twelve hundred dollar mortgage is on fifteen hundred dollar property, accept."   Now, leaving out of mind the erroneous dispatch, we may see the exact conditions under which Poston acted, and determine the question of his authority.   It is said the authority to accept was conditional on there being a one thousand two hundred dollar mortgage on a one thousand five hundred dollar stock, and not on there being a one thousand five hundred dollar mortgage on a one thousand two hundred dollar stock, and that plaintiff had a right to impose an arbitrary condition.   Without doubt, it had that right; and the query comes, did it impose such a condition?   That is, was Poston justified in construing the dispatch as authorizing the settlement only upon a literal construction of the dispatch, or was he to treat the words imposing the condition as meaning that there must not be a settlement less favorable to plaintiff?   The situation and understanding of the parties have much to do with this construction, and the case is presented on that theory.   From Poston's dispatch, as written by him, plaintiff would have known that the mortgage on Henderson's stock exceeded its value by three hundred dollars.   It would be known to be an estimate.   When the answer came, Poston would read it as if plaintiff knew what he (Poston) had said,

and he must have understood that he was to accept the offer of settlement under the facts as he had stated them, and also that he was to accept, unless the conditions were more favorable to plaintiff than they would be with a one thousand two hundred dollar mortgage on a one thousand five hundred dollar stock. We hazard little in saying that had Poston's dispatch been correctly transmitted, and had the same answer been returned, both plaintiff and Poston would have so understood the matter, and that it would be the natural and reasonable conclusion from the premises. The case, from a legal point of view, differs little, if any, from facts like these: A. is the agent for B. for the purchase of horses. A. writes to B. and says: "I can buy horses of a certain class for one hundred dollars per head. Shall I purchase?" B. answers, "If you can get them for ninety-five dollars per head, buy them." A. buys them for ninety dollars per head. No one would doubt his authority. Why? Because it is necessarily involved in the authority granted. The situation justifies a conclusion that the limitation arising from the conditional words is only against going further in one direction; that is, paying more. So in the case at bar. The conditional words imposed a limitation as to settlement only in case the stock, in value, exceeded the mortgage by more than three hundred dollars.

Appellant invokes some rules under the law of contracts, and cites numerous authorities, and among them Mechem Agency, sections 294, 297, 303. We do not discover a word in these sections against our theory of this question. Appellant omits section 298, which we think quite significant, and we quote it, with the one preceding it: "Sec. 297. In this case, as in the other cases, the intention is to be gathered from the whole instrument, whether it be made of one piece of paper or of many." "Sec. 298. And so, in doubtful cases, resort must be had to the situation, surroundings, and relation of parties; for though the writing cannot, in general, be contradicted by oral evidence,

yet the circumstances may properly be used as aids, and, by
putting the court more or less fully into the exact situation of
the parties, to enable it to see the subject-matter as they saw
it." Such is the method of inquiry we pursue in this case.
The rule that, in the making of contracts by correspondence,
the acceptance must be unconditional, is strongly urged as
applicable in this case. With our view of the case, the accept-
ance was unconditional. That rule has application as between
Henderson and plaintiff. When the answer came to Poston,
it fixed his authority; and the acceptance followed that, and
was unconditional. The only condition imposed was upon
Poston, which, as we hold, was observed, so that his authority
was complete. It is probably true that, with our construction
of the terms of the telegram, appellant would not urge the
authorities cited as applicable.

II. Contributory negligence is pleaded, and urged
against plaintiff. The claim is based first on the negligence
of Poston, in that when he received the reply to his dispatch,
it should have put him on inquiry, because of the language
as to a one thousand two hundred dollar mortgage on a one
thousand five hundred dollar stock, instead of as it was
expressed in the dispatch as written by Poston, and as to
plaintiff, it is thought there was negligence because of the
doubt and uncertainty arising from the dispatch as delivered
by the defendant. It does appear from the record that, when
plaintiff received the telegram from Poston, its meaning was
thought to be doubtful; and the agent at Humeston
was asked if it was correct, and he said he would have
it repeated, which he said he did, and that it was cor-
rect. The court submitted the question to the jury, and said
in its instructions: "As to whether the plaintiff, under
the circumstances shown, did all that reasonable, prudent
men would do under like circumstances, and exercised reason-
able care under the facts shown, will be a question for the
jury to determine from the evidence. If they did, they are
not guilty of contributory negligence in that regard. If they

did not, they are guilty of contributory negligence, and cannot recover beyond the amount paid for the telegram, with interest." As to the negligence of Poston, the court said: "It is also alleged that plaintiffs were guilty of contributory negligence, for the reason that the plaintiffs' reply message to their agent, Poston, was of such a nature as to put him on his guard, that they had not truly interpreted the message sent by him to them. The plaintiffs in the case at bar are responsible for the acts of their agent, Poston, and any negligence on his part in the performance of his duties would be imputed to plaintiffs. If the jury find that, under the circumstances shown, the said Poston did not use reasonable care, the plaintiffs would be held guilty of contributory negligence, and could not recover." We do not think the defendant has any ground for complaint on this branch of the case. As to the claim of negligence on the part of plaintiff, it could not be said to be negligence, as a matter of law, after the pains taken to know if the dispatch as received was correct; and, as to the negligence of Poston, the only doubtful question is if it does not affirmatively appear that he was not negligent. In this particular we may refer to our discussion in the first division of the opinion.

III. It is claimed that, after plaintiff knew of the mistake, it should have taken steps to rescind the contract of settlement; and reliance is placed on the familiar rule in Greenleaf Evidence, section 261, and stated in *Beymer v. McBride,* 37 Iowa, 114, that: "It is a general principle of law, in case of a breach of a specific contract, that, if the injured party can protect himself from damage, he is bound to do so, if practicable, at a moderate expense, or by ordinary efforts, and he can charge the delinquent party for such expense and efforts, and for such damages only as could not be prevented by the exercise of such diligence." We have found no case like this where such a rule has been applied. Appellant's claim in this respect is that: "As the extent and scope of Poston's authority to settle or compromise

was measured and defined by the two telegrams, and Henderson knew of the contents of the one sent, and either knew or had opportunity of knowing the one received, he was bound by the extent of the authority which Poston in fact had, and was charged with notice of its limitations. Hence he was in no position to legally resist a rescission or repudiation of the settlement." In view of what we have already said, there is a very conclusive answer to the claim. The claim is that Henderson was bound by the extent of the authority, on the theory of the first dispatch being correctly transmitted; and, conceding Henderson's knowledge to have been the same as that of Poston, the same inferences as to authority would be justified. If the situation would justify Poston in accepting the settlement offered, it would justify Henderson in completing the transaction. We are not to be understood as determining this question on any other theory or claim than the one presented. The case of *Reed v. Telegraph Co.* 135 Mo. 661 (35 S. W. Rep. 904), is, in several particulars, like the one at bar. The facts in that case are substantially these: One Hedges, residing at Cedar Rapids, Iowa, was the agent for Reed, the plaintiff, residing at Kansas City, Mo. Hedges filed with the company a dispatch to Reed as follows (omitting date, etc.):
"Offered thirteen hundred dollars cash, lot two, houses near planing mill. Must hear immediately. Can't get more." In transmission the word "thirteen" was changed to "nineteen," so that the offer to her was one thousand nine hundred dollars. She answered: "Sell property for amount offered. Will send deed Monday, 27." Hedges completed the agreement for the sale, and accepted part payment. When the deed came, it expressed a consideration of one thousand nine hundred dollars, and Hedges, thinking there might be a mistake, suggested waiting until he could write; but the purchaser refused and threatened suit, and the transaction was completed by accepting one thousand three hundred dollars. The action was to recover the deficiency, to make up the amount of one thousand nine hundred dollars. The court permitted a

recovery, and on the question of authority, which we have before considered, it said: "The defendant was fully advised of its importance, on the face of the message; and, after being so advised, its agent assured plaintiff that it had been repeated, and she could rely upon its correctness. In this way plaintiff was led to believe she was offered one thousand nine hundred dollars for her property. Being willing to part with it for that sum, she wired acceptance of the proposition made. The proposal was only one thousand three hundred dollars, but in this way she was made to accept that proposal. Her agent was clothed, not only with apparent, but actual, authority to sell for one thousand three hundred dollars so far as he was advised. Being thus empowered to sell, he made a binding contract, and accepted a part of the purchase money. The deed was forwarded, and he delivered it. All this was done upon reliance in the correctness of defendant's actions. Could a more natural consequence ever follow a transaction than this loss did upon the mistake of defendant?" In the same connection the court said upon the question of plaintiff's obligation to rescind: "Does it lie in defendant's mouth to speculate how plaintiff or her agent, by the exercise of care, which it failed to exercise, might have avoided her contract with the purchaser? Has the defendant the right to require plaintiff to enter upon a long and doubtful litigation to rescind the contract, which was fully executed by delivery of her deed, and the receipt of the purchase money? We most clearly think not. The cases cited by learned counsel do not meet this case. Here the damages are the direct result of defendant's negligence. Moreover, they had fully accrued when plaintiff discovered the mistake. There were no means of avoiding them, except to sue the blameless purchaser or the negligent company. She chose the latter course, and we think properly." In this case the note against Henderson for three thousand six hundred dollars had been surrendered, if not other securities, and the transaction was complete, so far as to make it binding between the parties.

IV.   The court, by its fifteenth instruction, left it to the jury to determine whether the telegram authorized Poston to make the settlement.   This is said to be error, and that it was the duty of the court to construe the telegrams.   Appellant's claim is made specific that Poston's authority must be determined by the two telegrams, omitting the erroneous one, and that it was the duty of the court to tell the jury what the two telegrams meant.   We determine the question on that theory, and such is the rule we have so far observed.   Under such a rule we need not determine the correctness of the instruction; for we have held that, as a matter of law, the telegrams gave authority, and the jury must have so found, in order to return a verdict for plaintiff.   Hence, no prejudice resulted from giving the instruction.   In view of another objection to the same instruction, we set out the important part of it, as follows:   "In regard to such defense, the jury are instructed that, in determining the true purport and meaning of the telegrams sent, the words used are to be taken in their usual and ordinary significance and meaning, and are to be interpreted in the light of the facts as they were known to the parties at the time.   If the said Poston did not exercise reasonable care in interpreting and acting on the message received, in view of the facts as he knew them, the plaintiffs cannot recover.   [The mere fact, however, that said Poston did not follow the strict letter of his authority in the message sent him, as to whether the mortgage referred to was a twelve hundred dollar mortgage on a fifteen hundred dollar stock, or a fifteen hundred dollar mortgage on a twelve hundred dollar stock, would not, alone, prevent a recovery, unless the jury find from the evidence that such departure occasioned, in whole or in part, the loss complained of.]"   The part now complained of we have included in brackets.   The complaint is that it permits a departure from the strict letter of the authority granted, which is said to violate the rule.   We read the instruction to mean, in the particular suggested, that, if there was otherwise a right of recovery, a departure from the strict letter not affect-

ing such right, would not defeat a recovery. It is saying, in effect that an immaterial departure would be without prejudice. Surely such an instruction does not violate the law. A further complaint is made of the same instruction in the use of the words: "If said Poston did not exercise reasonable care in interpreting and acting on the message received, in view of the facts as he knew them, the plaintiffs cannot recover." The complaint is that, "although the jury should find that the interpretation put upon the message by Poston was not the true one, and they should find that Poston used reasonable care in his effort to interpret, but made a mistake, they would still find for the plaintiff." Appellant's conclusion is not warranted. But, aside from this, in view of the legal construction to be put on the telegrams, and that must have been put upon them in reaching the verdict, no prejudice could result. We think, as does appellant, that it was a question of correct interpretation, and we think it affirmatively appears that the verdict is in accord with such an interpretation, because of which language complained of, even if erroneous, would be without prejudice.

V.    Mr. Hasbrouck, a member of the plaintiff firm, was permitted to testify, as was also the other member, that, if the telegram as filed by Poston for transmission had been received, they would not have sent the message they did send. There was no error in permitting the answers. It was a necessary fact to be shown under the issues, and it is difficult to imagine any other method of proving it. They were the only ones who knew the fact, and they did know. A state of facts so similar as to make the holding clear authority on this question is in *Insurance Co. v. Jamison,* 79 Iowa, 245. We need add nothing to what we have said in that case. The rule has support in cases therein cited, and in *Telegraph Co. v. Mitchell* (Tex.), 44 S. W. Rep. 247.

VI.    Dr. McCulloch, one of the plaintiff firm, in connection with his testimony as to the meaning of the telegram

received from Poston was permitted to state that he then knew, or had an idea in regard to, the value of the stock of goods, and to state that, according to his idea, the value was about one thousand five hundred dollars. It seems to be conceded in argument that, had the court limited the application of the evidence as to what was in the witness' mind in interpreting the dispatch from Poston, it might have been proper. There is scarcely room to doubt that the jury so understood it, from the connection in which it was given. We have no doubt that it was proper for that purpose, and, if proper, the error was not in admitting it, but in a failure to limit its application. The court was not asked so to do, nor error assigned upon such a refusal or neglect.

The instructions given are without prejudicial error, and they so fairly submit the case that there was no error in the refusal of those asked. The evidence clearly sustains the verdict. The judgment is AFFIRMED.