(99 App. Div. 143)

### ROOME v. ROBINSON et al.

(Supreme Court, Appellate Division, First Department. December 9, 1904.)

1. REAL ESTATE BROKERS—COMMISSIONS—SUFFICIENCY OF EVIDENCE.

Evidence, in an action by a broker for commissions for selling defendants' real estate, held insufficient to warrant the court in directing a verdict for plaintiff.

2. SAME—BURDEN OF PROOF.

To entitle a broker to recover commissions for selling defendants' real estate, he must show his employment, the rendition of services at defendants' request, and that he acted in good faith for their best interests.

3. SAME—GOOD FAITH OF BROKER.

In an action by a broker for commissions for selling defendants' real estate, held, that whether plaintiff was acting in good faith for defendants' interests was a question for the jury.

4. SAME—EVIDENCE—ADMISSIONS—NEGOTIATIONS FOR COMPROMISE.

In an action for broker's commissions for the sale of defendants' real estate, it appeared that defendants had refused to sell the property as they had previously agreed, and that a consultation was had, at which plaintiff, defendants, and the proposed purchaser were represented; that at this meeting was presented a proposed contract for a settlement of their differences, previously signed by one of defendants, and providing for the payment of plaintiff's commissions, but no settlement was agreed on at that time. Held, that such proposed contract was not admissible in evidence as an admission of defendants' liability to plaintiff.

Appeal from Trial Term, New York County.

Action by William J. Roome against Josephine G. Robinson and another. From a judgment entered on a verdict directed by the court, and from an order denying a motion for a new trial, defendants appeal. Reversed.

The plaintiff seeks to recover of the defendants commissions as broker, amounting to $4,005, which he alleges were due him for procuring for them at their request a purchaser of their property on the southwest corner of Sixth avenue and Twenty-Third street. The defendants denied that they

agreed to pay the plaintiff for procuring a purchaser, or that he did so as alleged in the complaint. The defendants' property had been leased to the Riker Drug Company, and the plaintiff, who had originally purchased it for the defendant's mother, testified that, knowing the lease had not long to run, he suggested to the Riker Company that they buy that or some other property in the neighborhood, and thereafter the officers of the company told him they desired to purchase property, and he said he would see whether they could buy from the defendants; that he sent to the defendants his employé. Green, who returned with a paper signed by Josephine Robinson, addressed to plaintiff, saying she would sell for $400,000; that he then went personally to the Robinsons and obtained the following letter, signed by one of the defendants:

"March 11, 1901.

"Mr. Roome—Dear Sir: We will take four hundred and five thousand dollars for the southwest corner of 23rd street and Sixth avenue. This price only to hold good till Tuesday, March 12, 1901, twelve o'clock.

"Respectfully yours,          A. Robinson."

The plaintiff further testified that he told the Riker Company the result, and it was agreed that the decision would be given the following morning, and at that time he was told that the company would purchase the property, and wrote to the defendants as follows:

"March 12th, 1901.

"Dear Miss Robinson: I have sold your property on the southwest corner of 23rd street and Sixth avenue for $405,000. As required by your note of yesterday, my parties buy the property before 12 M. March 12th, 1901.

"Yours respectfully,          William J. Roome.

"To Miss J. C. Robinson and Miss A. Robinson."

The plaintiff also testified that he had spoken to the defendants before about selling their property, and made some offers, and they said that if they got a good price they would sell. but had not concluded whether to sell or not; that he had talked with the Riker people about purchasing the property, and he thought that, if they could not buy elsewhere in the vicinity, they would have to purchase from defendants, as the location was valuable to them; that he knew the company did not wish it to be known that they were buying, and he did not tell the defendants that their own tenant was desiring to purchase; and, when the contract was drawn up, the name of Mr. Rockwell, a relative of the Rikers and a man without means, was inserted as purchaser. An officer of the Riker Company testified that he had been speaking with the plaintiff of purchasing property, and plaintiff said he did not think the company could obtain defendants' property for $400,000; that finally he "asked Mr. Roome to go to Miss Robinson and see at what price he could get the property for us"; that the Riker Company was anxious that the Robinsons should not know it was the company that desired to purchase, "because we thought that would put the price up," and so Mr. Rockwell was mentioned, but "we were supplying the financial ability"; that "as a matter of fact we subsequently paid $465,000. * * * We had to pay it to get it."

In corroboration of plaintiff's testimony, Green testified that he obtained a written offer from defendants to sell, and thereafter interviewed the defendants, and, upon being informed of the sale, one of the defendants said that the contract would be signed in a few days, and that she would pay the 1 per cent. commission to the plaintiff, and the sum of $25,000 was fixed as the amount to be paid upon execution of the contract. The defendants subsequently refused to sign the contract, or to sell for $405,000, and this resulted in two actions being threatened—one by Rockwell for specific performance, and one by plaintiff for commissions. With a view to settle and adjust these suits and the differences between the parties, a meeting was held in May, at which the defendants were represented by an attorney, who called the conference, and an attorney appeared for Mr. Rockwell, and also for plaintiff, and a proposed contract was exhibited, signed by one of the defendants. Under objection and exception a copy of this contract was put in evidence, although it was testified that the meeting and what was said and done were to be without prejudice to any of the parties. This proposed contract contained a clause as follows: "It is agreed that out of the first payment of

$25,000 the party of the first part (defendants) will pay to William J. Roome his commission of $4,005 for effecting this sale, and his action to recover same is thereupon to be discontinued, without costs."

The learned trial judge directed a verdict in plaintiff's favor for the commissions claimed, and from the judgment so entered the defendants appeal.

Argued before HATCH, McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Harold Nathan, for appellants.

Henry W. Jessup, for respondent.

O'BRIEN, J.   We think that the judgment in this case must be reversed.   It was entered on a verdict directed in favor of the plaintiff, but in our view, giving to the testimony the inferences most favorable to plaintiff, the learned trial judge had no right to determine the issues in his favor as matter of law; they being, in our opinion, questions which should have been submitted to the jury.   In order to recover, it was necessary for the plaintiff to prove, first, an employment by the defendants; second, the rendition of services at their request; and, third, that in connection with such employment he acted in good faith toward the defendants.   Were it not for the testimony of Green to the effect that the day following the alleged employment he called at the defendants' home and saw one of the defendants, who told him that she had received the plaintiff's letter announcing that he had sold the property and that she was willing to pay 1 per cent. commission, there is little, if any, proof of employment or agreement to pay for the services rendered.   It is to be noted that this expression of willingness to pay by one would not necessarily bind both defendants.   Moreover, Green being an interested witness, his testimony is not conclusive.

The further question as to whether the plaintiff was acting for the Riker Company or for the defendants is also involved.   Taking plaintiff's testimony, it cannot be said as matter of law that it was established that he was acting solely as the broker of the defendants.   Such a determination cannot be conclusively made from the letter, which the plaintiff obtained from one of the defendants, wherein she stated the sum that she and her sister would take for the property, which letter, it would appear, was obtained by the plaintiff as the result of a suggestion of the Riker Company that he should get from the owners of the property something in writing expressive of their willingness to sell. Involved and included in this question of whether the plaintiff's employment was by the defendants or by the Riker Company is the subsidiary one to which we have adverted, namely, whether the services performed were rendered at the request of the Riker Company or at the request of the defendants.   This, like the principal question of who really employed the plaintiff, we think was for the jury, and could not, as matter of law, be resolved in plaintiff's favor.

So, too, the question of plaintiff's good faith was one of fact.   As said by Andrews, J., in Carman v. Beach, 63 N. Y. 97:

"If the plaintiff proceeded to act under his employment, it was his duty to act solely for and in the defendant's interest.   This, although not expressed, was implied in the contract.   The defendant was entitled to the disinterested efforts and judgment of the plaintiff in the matter of the agency, and if the plaintiff procured a purchaser for whom he was also acting as agent, without

disclosing the fact to the defendants, it would have constituted such a fraud as would have precluded him from recovering any compensation."

And in Claflin v. Farmers' & Citizens' Bank, 25 N. Y. 293, it was said:

"The principal is entitled to the exercise in his behalf of all the skill, industry, and ability of his agent, and to his intensest fidelity to his trusts."

Upon this question of whether or not the plaintiff acted in good faith as the defendants' broker, we have the evidence that with knowledge of the anxiety displayed and the desire expressed by the Riker Company to obtain the property, and with a view to aiding them in that direction, the plaintiff deliberately suppressed the name of the Riker Company in the transaction, for fear it would provoke the defendants into demanding a higher price, and that, in order to successfully carry out this concealment, the contract, which was really for the Rikers, was at the suggestion of the plaintiff to be taken in another name, and as a consequence Mr. Rockwell, who was related to the Rikers, was mentioned by them as a person in whose name the contract should be made; it being understood by both the plaintiff and the Rikers that the person so selected was a mere figurehead in the transaction, and possessed neither the money nor the financial ability to complete such a large transaction. If the plaintiff was working solely in the interest of the defendants, and was employed by them, then he was under the implied obligation of using the utmost good faith, candor, and zeal in obtaining for them the best price for their property. From all the testimony, however, two inferences are inevitable; the first being that he was willing to aid the Riker Company in obtaining the property at the lowest price for which the defendants were willing to sell, and the other that he deliberately suppressed the fact that that company was the purchaser, because he, as well as the officers of the Riker Company, were fearful that, if this was known to the defendants, they would demand a higher price for the property. That this fear was entirely justified appears from what subsequently occurred when, the defendants having refused to carry out the contract and the Riker Company having come out into the open as purchasers, the defendants insisted and obtained from that company the sum of $465,000 for the property, which was an advance of $60,000. We do not think, therefore, that the good faith, zeal, and fidelity of the plaintiff to the defendants were conclusively established, but, as already said, taking the most favorable view, there was, on this issue, a question for the jury.

We think that the conclusion of the learned trial judge was to some extent influenced by evidence improperly received, which, when admitted, must have had weight in his decision that the plaintiff had made out a cause of action as matter of law entitling him to a direction of a verdict. Over the objection and exception of defendants he admitted in evidence the proposed contract to which we have referred, signed by one of the defendants, in which was a provision requiring the defendants to pay the plaintiff commission. It appears that after the plaintiff had begun this suit, and another suit had been threatened by Rockwell for specific performance, the attorney for the defendants drew up the contract in question, had it signed by one of them, and then sent word to the proposed purchaser, Rockwell, and his attorney, and to the plaintiff

and his attorney, to attend a meeting for the purpose of reaching a compromise and settling and adjusting their differences. The persons designated did attend the meeting, and it is not seriously disputed but that the attorney for the defendants opened the conference by a statement that whatever was said or done was to be without prejudice to the rights of any of the parties. Then succeeded a discussion of the terms of statement, and, among other things, reference was made to the proposed contract, signed by one of the defendants, which contained the provision about paying the commission to the plaintiff. The attempt, however, to reach a settlement, was abortive, the contract was not signed as executed by the parties thereto, and they finally separated because of a failure to agree. Upon the trial the plaintiff produced a copy of this proposed contract, upon the theory, no doubt, that it was an admission against interest, and was successful in obtaining a ruling by the learned trial judge, over the objection and exception of the defendants, admitting it. This, we think was error. As well stated in White v. Old Dominion S. S. Co., 102 N. Y. 661, 6 N. E. 289:

"There is no doubt but that the rule is well established in this country that the admission of a distinct fact, which in itself tends to establish a cause of action or defense, is not rendered inadmissible from the circumstance that it was made during discussion relating to a compromise, unless it is expressly stated to be made without prejudice; but if the admission is of such a nature that the court can see it would not have been made, except for the purpose of producing the objects of the negotiation, and under an agreement that could fairly be implied from the circumstances that it was not to be used afterwards to his prejudice, it is not error for the court to exclude the evidence. The rule referred to is founded upon public policy, and with a view of encouraging and facilitating the settlement of legal controversies by compromise, which object is supposed to be obstructed by the fear entertained by litigants that such a negotiation may be converted into a trap to inveigle the unwary into hazardous admissions. The law, therefore, excludes such admissions as appear to have been made tentatively or hypothetically, but admits those only which concede the existence of a fact. Stephens on Evidence states the rule to be that they are inadmissible 'if made under circumstances from which the judge infers that the parties agreed together that evidence of it should not be given.' Wharton's most recent work on Evidence says: 'An implied admission of liability, made a part of the negotiations for a compromise expressly for the purpose of peace (whether such admission be made under the technical proviso without prejudice or not), will not be received in evidence against the party making it.' Section 1082."

See, also, Tennant v. Dudley, 144 N. Y. 504, 39 N. E. 644; West v. Smith, 101 U. S. 273, 25 L. Ed. 809.

These authorities, as well as the text-books, will show that the only kind of an admission made during an attempt at compromise which can be received in evidence is where there was a distinct, unqualified admission of an independent fact, made, not as a part of an attempted adjustment, but because it was a fact. Here the provision in the proposed contract could not be regarded as an admission of a distinct fact outside of the proposed compromise which was sought to be effected. Nor was it a distinct admission of liability at all; the most that could be said of it being that it was a provision incorporated in a proposed contract, which, if carried out, so as to give the defendants the benefit of the other provisions, would have obligated them to pay the plaintiff's commission. The insertion of the provision was not necessarily because the defendants were legally liable for the commission, but it was inserted

because the defendants, for the purpose of stopping litigation and obtaining the advantages resulting to them from carrying out of an entire agreement of compromise, were willing to assume the obligation with respect to the payment of the commission. The contract not having been executed or delivered, and having been prepared only to promote a compromise, which was not actually made, we think the admission of the contract was violative of the rule excluding such evidence.

If, outside of this evidence, there was sufficient to justify the direction of a verdict, we should not, because of this error, reverse the judgment; but, as we have endeavored to point out, the questions of fact as to the plaintiff's right to recover upon the evidence should have been submitted to the jury. . As there must be a new trial, we deem it proper to call attention to this erroneous ruling, so that it may not, upon the new trial, be repeated.

We think, therefore, that the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN, HATCH, and LAUGHLIN, JJ., concur.

INGRAHAM, J. I concur in the reversal of this judgment upon the ground that upon the undisputed evidence the plaintiff failed in the performance of the duty of working solely in their interest in obtaining for them the best price for their property that he owed to the defendants. The plaintiff does not dispute that he failed to communicate to the defendants the fact that the Riker Company were the purchasers of the property, and acquiesced in the substitution of a dummy for the Riker Company as the purchaser, because of the fear that, if the defendants had knowledge of the fact that their tenant was endeavoring to purchase the property, they would insist upon a greater price. I think this conduct entirely inconsistent with the duty of a broker to his client, and thus, upon the undisputed evidence, the plaintiff did not perform the duty that he assumed when he undertook to act for the defendants. For that reason he is precluded from recovering.