A. C. LARSON and JAMES COLLINS v. JOHN C. THOMA,
Appellant.

**Sale of real estate on commission:** AGENCY: FRAUD. Where the re-
1 lation of agency does not exist between a real estate dealer and
his customer, but his compensation is to come from the owner
of the property in case a sale is effected, he may, upon ascertain-
ing that his customer is likely to desire a certain property, procure
from the owner an agency for its sale at an agreed commission,
and is not bound to disclose the fact that he then had a possible
purchaser; and his failure to do so can not be made the basis of
a charge of fraud in defense to an action for the commission,
upon concluding a sale to such customer.

**Same:** COMMISSION: RECOVERY OF. The mere fact that a real estate
2 dealer used no persuasion to induce a customer to purchase,
will not preclude his recovery from the owner of the commission
agreed to be paid for effecting a sale.

**Same:** EVIDENCE. For the purpose of determining whether a broker
3 effected or materially influenced a sale, all the facts and circum-
stances bearing upon the prevailing cause of the sale, the course
of conduct of the purchaser and his purpose with reference to
his several acts may be shown; and on this question the pur-
chaser as a witness may state that he would not have purchased
the property, except for his talk with the broker.

**Same:** EVIDENCE OF INTENT. Where material, the intent with which
4 a witness did certain acts may be shown, though not conclusive
on the subject, as against inferences to be drawn from his conduct
and actions, and the circumstances tending to give them color.

**Contract for sale of land:** EXPLANATION BY PAROL. Where the con-
5 tract for the sale of a farm and other property, provided for a
lump sum for the whole, with no reference to the price at which
the farm was included, it was competent to show by parol the
price placed upon the farm for the purpose of determining whether
the agent was entitled to a commission for the sale of the farm.

**Exemplary damages:** INSTRUCTION: PREJUDICE. Where the jury,
6 in answer to special interrogatories, expressly negatived wrongful
or malicious suing out of an attachment, there was no prejudice

in the refusal of an instruction with reference to exemplary damages.

**Special interrogatories:** SUBMISSION IN CONNECTION WITH INSTRUCTIONS. In the submission of special interrogatories, the court should not call attention to certain instructions, in connection therewith, which present most favorably to one of the parties, the law applicable thereto; but if the instructions are to be considered in connection with the special interrogatories, the court should indicate that all instructions on the subject should. be so considered.

**Instructions:** CONFUSION: PREJUDICIAL ERROR. Where the jury expressly found in answer to special interrogatories, that an attachment was not wrongfully sued out, and returned a verdict for plaintiff in a specific sum, any error in the instructions as to how they should return the verdict, in view of the possible conclusions as to the validity of the respective claims of the parties, was without prejudice.

*Appeal from Allamakee District Court.—*Hon. A. N. Hobson, Judge.

FRIDAY, JULY 2, 1909.

ACTION to recover commission for sale of real estate. There was a counterclaim for damages for wrongfully suing out of attachment. There were special findings by the jury that the attachment was not wrongfully sued out, and that plaintiffs did not sue out such attachment with the intent or purpose of harassing or coercing defendant, and there was a general verdict for the plaintiffs in the amount of their claim. From a judgment on the verdict, defendant appeals.—*Reversed.*

*W. S. Hart* and *H. E. Taylor,* for appellant.

*J. E. O'Brien, Dayton & Dayton,* and *D. J. Murphy,* for appellees.

McCLAIN, J.—I. There was evidence tending to

show that plaintiffs effected a sale of defendant's land to one Conrad in accordance with the terms of a contract under which plaintiffs were to receive $160 in the event of effecting such sale, but it is contended for appellant that a verdict should have been directed for the defendant, or a new trial granted on plaintiffs' motion, because it conclusively appeared that the contract for commission on which plaintiffs sue was procured by fraudulent concealment, and also because the court erroneously withdrew from the consideration of the jury any question of fraud as to the procuring of such contract. These three assignments of error may be considered together, as they relate to the claim of the appellant that fraud in the procuring of the contract was established.

On the 15th of December, 1905, the plaintiffs, who were partners engaged in the business of selling real estate on commission, took Conrad and his wife from Waukon, to what is called the "Sandry place," about fifteen miles distant, with a view of effecting a sale thereof to said Conrad, who had already indicated to them his intention of buying the place if it suited his wife. Mrs. Conrad was not satisfied with the Sandry place, and, instead of going to Lansing, a few miles distant, for the purpose of returning home by rail, they went back with plaintiffs to Waukon, and remained over night. There is a controversy in the evidence as to what the purpose of the Conrads was in thus returning to Waukon, but as this purpose, so far as it was known to plaintiffs, was involved in the determination of the question whether any fraud was perpetrated by plaintiffs on defendant in the subsequent transaction with him, and as the court refused to submit any question of fraud to the jury, we must give the version of the facts found in the evidence of Conrad which was most favorable to defendant, although it was contradicted in some respects by that of the plaintiffs. Conrad testified that, while they were at the Sandry place, he and his wife

talked about going back to Waukon for the purpose of looking at a farm which had previously been described to them in a general way by one O'Brien as likely to suit them. O'Brien had some time before conveyed this information to Conrad in a conversation held elsewhere, and it is conceded that he had no interest in the sale of the farm thus recommended, and that such farm was the farm which defendant subsequently sold to Conrad, on which sale plaintiffs are now seeking to recover a commission. It was therefore agreed between the Conrads and plaintiffs that the former would return to Waukon with the plaintiffs, nothing being said at this time about the desire of Conrad to look at the other place, and the plaintiffs urging such return in order that they might show the Conrads other farms which they had for sale nearer Waukon. During a conversation held in the evening at the hotel in Waukon where they stayed, in which plaintiffs tried to persuade the Conrads to look at other farms which plaintiffs had for sale, Conrad referred to the fact that a farm in the neighborhood had been recommended to them by O'Brien which he and his wife wanted to see. Being unable to give the name of the owner or other description of this farm which would identify it, a number of places were referred to, among them what was designated as the "Eels place," which Conrad said was the place he had in mind, and which was thus identified as being the farm of Thoma, and the plaintiffs said that they would willingly take the Conrads out the next day, and show them that place. It was thereupon arranged between the Conrads and plaintiffs that the latter would on the next morning take the Conrads to look at the Thoma place and some other farms, and plaintiff Larson, in accordance with this arrangement, drove the Conrads to the Thoma place next morning. Up to this time the plaintiffs had not had any agency for the sale of the Thoma place, but early in the morning, before Larson started out with the Con-

rads, plaintiff Collins went to the Thoma place, and had
an interview with the defendant, in which the latter agreed
that plaintiff should have a commission of $1 per acre
for the sale of defendant's farm of one hundred and sixty
acres at $85 per acre.  Returning from the Thoma place,
Collins met Larson and the Conrads driving out, and
secretly conveyed to Larson the information that an agency
for the sale of the Thoma place had been secured.  Larson
proceeded with the Conrads to the Thoma place, which
was inspected by the latter, and then took them to look
at another farm for which plaintiffs also had the agency,
but this last place visited was unsatisfactory to the Con-
rads, and they declined to visit another farm, the price of
which, as stated to them, they thought rendered it undesir-
able, and returned with Larson to the Thoma place, which
they then agreed to buy.

In short, the fraud, if any, on the part of plaintiffs
in their dealings with defendant, consisted in securing
from defendant a contract for a commission' on the sale
of defendant's farm, concealing from him
the fact that the Conrads, to whom plain-
tiffs expected to effect a sale of the farm,
were already on their way out to see it with
the object of purchasing it should it prove satisfactory
to them.  Now, it can not be contended that a real estate
agent, having in tow a customer who, as he has discov-
ered, is desirous of purchasing property of a particular
kind or character, is bound before he enters into negotia-
tions to secure the agency for property which he thinks will
suit his customer to disclose to the owner of such property
the probability that he will be able to effect a sale.  It is
a part of his business to ascertain what kind of property
his customer wants and to supply him with such property,
if he can, and as in cases like this, where there is no relation
of agency between the real estate man and his so-
called customer, and his commission is to be earned, if at

1. SALE OF REAL
ESTATE ON
COMMISSION:
agency: fraud.

all, by securing compensation from the owner of the property for effecting its sale to such customer, there can be no impropriety in his seeking to secure from owners of property which he thinks will suit his customer contracts for a commission for a sale thereof. At the time when Collins interviewed defendant and secured from him a contract, there was no relation of confidence between them. They were dealing at arm's length. It was for defendant to say whether he desired to secure the services of plaintiffs in effecting a sale of his farm at a specified price for an agreed commission, and we think that, under the facts of this case, there was no fraud on the part of plaintiffs in failing to advise defendant that they already had a customer in tow who wanted to examine defendant's place with a view of making a purchase. Had plaintiffs not secured the agency for the sale of defendant's place, they might have used legitimate arguments to dissuade the Conrads from making the purchase, they might have enlarged more fully than they did upon the advantages of other places which they had for sale, and might at least have induced the Conrads to defer concluding the purchase until plaintiffs could secure more advantageous terms from the owners of other properties which they might offer.

The mere fact that plaintiffs used no persuasion to induce the Conrads to purchase defendant's place does not preclude them from having a commission for effecting its sale. *Lee v. Conrad,* 140 Iowa, 16. The authorities relied upon for appellant are, in general, those in which it is held that an agent can not act for two principals, and that any contract by which he attempts to do so is void for fraud. *Roome v. Robinson,* 99 App. Div. 143 (90 N. Y. Supp. 1055); *Murray v. Beard,* 102 N. Y. 505 (7 N. E. 553); *Wilkinson v. McCullough,* 196 Pa. 205 (46 Atl. 357, 79 Am. St. Rep. 702). In *McCrory v. Kellogg,* 106 Mo. App. 597 (81 S. W. 465), and *Bellesheim v. Palm,* 54

2. SAME:
   commission:
   recovery of.

App. Div. 77 (66 N. Y. Supp. 273), the question seems to have been whether the agent did, in fact, produce the purchaser to whom the sale was made.

It is to be noticed that the Conrads had not formed any definite intention of buying the defendant's place when they went out to look at it with Larson. They had communicated neither with the defendant nor with any one who represented him in reference thereto as agent or otherwise. They had simply acquired the information that there was such a place in the neighborhood of Waukon which they thought might suit them. Collins did not misrepresent any fact when he said to defendant that he thought he could bring a purchaser to buy his farm at the terms specified if he should be allowed a commission for doing so. Our conclusion that plaintiffs perpetrated no fraud on defendant in concealing their knowledge that the Conrads desired to look at his place with a view of a possible purchase is supported by the authority of *Donohue v. Padden,* 93 Wis. 20 (66 N. W. 804), and *Barringer v. Stoltz,* 39 Minn. 63 (38 N. W. 808). The facts in these cases are analogous to those in the case before us, and the conclusions reached are in harmony with our conclusion in this case, as already indicated. We think the court did not err in refusing to submit any question of fraud to the jury.

II. Conrad, as a witness for defendant, testified that he and his wife returned to Waukon instead of going to Lansing and on home, because they knew about the place 3: SAME: evidence. which they afterwards purchased, and came back to Waukon for the purpose of seeing it, and that, while at the Sandry place, he and his wife talked with each other about returning for that purpose. This last answer was stricken out as incompetent. We think that on the issue as to whether plaintiffs actually procured Conrad as a purchaser for the Thoma place this answer was competent, and should have been allowed to stand.

The intention of Conrad at this time was material, though by no means conclusive; for, even if he then had the intention of looking at the place of which he had heard from O'Brien and which afterwards turned out to be the Thoma place, it does not necessarily follow that he would have purchased it without any intervention of plaintiffs in the matter. But, in getting at the controlling cause of his final purchase, we think it was competent for defendant to show his entire course of conduct and his purpose with reference to his several acts. All the facts and circumstances could properly be taken into account as bearing upon the question as to what was the prevailing cause that led him to buy the Thoma farm. *Furlong v. North British & Mercantile Ins. Co.,* 136 Iowa, 468; *Golden v. Vyse,* 115 Iowa, 726; *McDermott v. Hacker,* 109 Iowa, 239; *Mann v. Taylor,* 78 Iowa, 355.

The witness was further asked whether or not he would have bought that farm if he had not talked with plaintiffs about it at all, and an objection to this question was sustained. We think the court might well have allowed the question to be answered. It does not appear in this immediate connection what answer the witness would have given. But from the tenor of the examination we think it is plainly apparent that defendant expected an answer to the effect that the witness would have bought the farm although he had not talked with plaintiffs about it, and that, if the objection to the question had not been sustained, such an answer would have been given. It is urged that the question calls only for a conclusion, and in a sense this is true, but the issue involved the determination of the jury as to whether the acts of plaintiffs brought about the sale or had a material influence in bringing it about, and we hardly see how the jury could have passed on that question without taking into account the motives and purposes of the witness and the causes which influenced his action.

Where intent is material a witness may testify to such intent, although, of course, his testimony as to what his intent or purpose was is not conclusive as against the inferences to be drawn from his actions and the circumstances tending to give color to them. *Hasbrouck v. Western Union Tel. Co.*, 107 Iowa, 160; *Huggard v. Glucose Sugar Ref. Co.*, 132 Iowa, 724; *Taylor v. Star Coal Co.*, 110 Iowa, 40; *Browne v. Hickie,* 68 Iowa, 330; *Goodfellow v. Riggs,* 88 Iowa, 540. Perhaps, under the entire examination of the witness Conrad, it might well be said that defendant was not prejudiced by these rulings, inasmuch as the witness did testify quite fully as to his intent and motives and the causes which led him to return to Waukon and insist on looking at the Thoma place, but, in view of the necessity of remanding for an error hereafter to be pointed out, we have thought it proper to say that the witness should have been allowed to testify fully as to the motives and purposes which actuated him in his conduct.

4. SAME: evidence of intent.

III. The sale actually made by defendant to Conrad included not only the one hundred and sixty acre farm for the sale of which plaintiffs claimed to have an agency, but also a tract of timber land, and the lump consideration was $14,000. It is contended for appellant that in estimating this consideration the farm was not included at the agreed price of $85 per acre, but that the consideration was in fact reduced, and appellants contend that the court erred in allowing Larson to testify as a witness in regard to conversations between defendant and Conrad as to the terms of the sale, insisting that the written contract of sale between them specifying an aggregate consideration of $14,000 could not be explained by parol evidence. As the contract does not fix the price at which the farm was included in this total, we are unable to see that the evidence was open to any objection. The question of fact as between

5. CONTRACT FOR SALE OF LAND: explanation by parol.

plaintiffs and defendant was as to whether the farm was sold at $85 an acre, and as to that question the written contract affords no information.    It is no more favorable to one party than to the other.    The fact was therefore to be established by competent evidence without regard to the terms of the contract of sale.

IV.    With reference to defendant's counterclaim for damages alleged to have resulted from a wrongful suing out of an attachment by plaintiffs, the complaint for ap-

6. EXEMPLARY DAMAGES: instructions: prejudice.

pellant is that the instructions were in a general way too favorable to the plaintiffs. But, in the absence of a more specific statement of the grounds of complaint, we are not justified in discussing the instructions given.    An instruction was asked for defendant to the effect that a levy under the writ of attachment was not authorized to an amount exceeding $270, and that, if plaintiffs caused property to be levied upon greatly in excess of that amount, the jury might consider such fact in determining whether to allow defendant exemplary damages.    But, as the jury by answers to special interrogatories expressly negatived wrongful or malicious suing out of the attachment, there was no possible prejudice in refusing an instruction in regard to exemplary damages.

V.    It is contended, however, for appellant that the court erred in the method of submitting special interrogatories already referred to, in this: that the jury was told

7. SPECIAL INTERROGATORIES: submission in connection with instructions.

in answering such interrogatories to consider particularly two instructions in connection with all the evidence before them and all the instructions given by the court.    As the interrogatories involved conclusions of the jury in regard to an issue which was to be determined by application of rules of law to the evidence offered, it was perhaps not improper to direct the attention of the jury to the instructions of the court on the subject, but we are satisfied that

it was improper to specifically point out particular instructions to be considered in answering such interrogatories, which instructions were specially favorable to the plaintiffs. If the instructions of the court were to be taken into account in the answering of the special interrogatories, the court should have in some way indicated to the jury that they were to considered all the instructions on that subject, and not simply certain instructions which presented most favorably to the plaintiffs the law applicable to the questions involved. The court, in fact, by its method of presenting these special interrogatories indicated to the jury that the answers should be in the negative, and this was erroneous.

VI.   Finally, it is urged that the court so instructed the jury with reference to how they should return a verdict in view of the possible conclusions which might be reached by them as to the validity of plaintiffs' claim and the validity of defendant's counterclaim as to leave them in confusion and render the verdict as returned uncertain. We confess that the instruction as given in the record is not very clear, and that the jury might have found difficulty in applying it, had they attempted to allow damages to defendant on his counterclaim. But by the answers to special interrogatories the jury expressly determined that the attachment was not wrongfully or maliciously sued out, and, under the instructions of the court, they could not in view of such finding have returned any verdict in favor of defendant on his counterclaim. We must presume, therefore, that all the jury attempted or intended to do in returning a verdict for the plaintiff in the sum of $160, was to fix the plaintiffs' damages for breach of contract, and to find as against the defendant on his counterclaim. This is so clear under the record that we would not be justified in setting out or discussing the instruction complained of,

8. INSTRUCTIONS: confusion: prejudicial error.

for if there was error therein, it was manifestly without prejudice to the appellant.

Other alleged errors are argued, but, in view of the conclusions already indicated, we think it not necessary to consider them. If the case is retried on the theory indicated in this opinion, the rulings complained of, if erroneous, are not likely to be repeated.

For the error pointed out in the fifth division of this opinion, the judgment is *reversed*.

Weaver, J.—I concur in the result reached by the majority, but am thoroughly convinced that the evidence is sufficient to sustain a finding of fraud as charged in the petition.