BESSIE C. STOUT et al., Appellees, v. JAMES VESELY et al., Appellants.

No. 45136.

FEBRUARY 13, 1940.

REHEARING DENIED JUNE 20, 1940.

Lee J. Farnsworth and E. E. Collins, for appellants.

S. W. Livingston and Baldrige & Bailey, for appellees.

MITCHELL, J.—Vancal Vesely was born in Bohemia and came to this country when quite young. He was a farmer and lived on his own farm for better than a half century. His wife died in 1932, and he died on December 6, 1937. He had six children, all of whom survived him. On September 14, 1937, Vancal Vesely executed a deed to certain real estate to his son James, which was recorded the same day in the office of the county recorder of Washington county, Iowa. On March 2, 1938, this action was commenced by three of the daughters and two of the sons of Vancal Vesely against James Vesely to set aside the deed alleging it to have been procured by undue influence. There was a trial at which a great deal of evidence was offered, and the lower court entered a decree as prayed for setting aside the deed. James Vesely has appealed.

The evidence shows that Vancal Vesely was rather eccentric in his manner and way of living. That he had a very limited business experience and that during her lifetime he relied largely on his wife for advice in business matters. That after her death, his son James, the appellant, handled practically all his business. That there was a very friendly feeling between the father and all of his children.

That all the children did what they could to be kind and considerate of him and thoughtful of his welfare.

In the fall of 1937, Vancal Vesely had reached the age of 77 years, his health was not good, and the 7th day of September of that year, he was taken to the home of the appellees. Just 7 days later, to wit, September 14, 1937, James Vesely and his wife took the father to Washington, Iowa, and had the deed prepared, which is sought to be set aside in this action.

The legal principles involved herein are not in real dispute, as the law is well settled. We have recently in the cases of Osborn v. Fry, 202 Iowa 129, 209 N. W. 303; Johnson v. Johnson, 196 Iowa 343, 191 N. W. 353; and Ennor v. Hinsch, 219 Iowa 1076, 260 N. W. 26, reviewed the authorities.

It is the application of these legal principles to the facts involved that is difficult.

Constructive fraud does not necessarily negative integrity of purpose and is, ''such contracts or acts as, though not originating in any actual evil design or contrivance to perpetrate a fraud, yet by their tendency to deceive or mislead, or to violate a confidence are prohibited by law.'' The doctrine arises from the very conception and existence of a fiduciary relation, and in every transaction in which the superior party obtains a possible benefit, equity raises a presumption against its validity and casts the burden of proving affirmatively its compliance with equitable requisites, upon the party receiving the possible benefit. This presumption, however, arises only where, as in this case of child and parent, the child is the dominant personage in that relationship and the parent has become the dependent one, trusting himself and his interests to the advice and guidance of the child.

■ The record shows that James Vesely handled his father's business in the last few years of his life. That the father was rather eccentric, and had little to do with his neighbors. That he was not in the best of health, that there was a kindly feeling between the father and all of his children, that on numerous occasions he had said that he was going to divide his property equally among his children.

James Vesely took his father to his home on the 7th day of September, and just 7 days later, James and his wife took the father to Washington to a stranger and had the deed prepared and recorded. The old gentleman did not have the advantage of an independent adviser. There was no consideration for the deed, and by the transfer of the real estate practically all Vancal Vesely's property was taken from him. It did not even contain a clause for the keep of the father during his lifetime. True there is reference to a small amount of personal property, a few hundred dollars and a note for $1,000, but all of this was claimed by James, and the administrator had to commence an action in replevin to secure it.

The appellant claims that in 1915 Vancal Vesely deeded this same farm to his son James, and that in 1918 James had joined the army and was ordered to duty, thus requiring him to leave the farm, and that he conveyed the real estate to his father. He claimed that there was an agreement between his father and himself, that his father was to reconvey the farm to him if he should return from the war alive.

The trouble with this theory is that the consideration for the deed in 1915 was for $9,400. The payments to be made in accordance with a written contract entered into between James and his father. That he did not make these payments is not denied. The 1937 deed was without consideration. Then also James made no effort to secure the return of title for almost 9 years after he returned from the army. One cannot read this record but come to the conclusion that James was anxious to deed the farm back in 1918 in order that he might be relieved from the payments due under the contract.

Here we have a case where a son handled his father's busi-

ness in the declining years of his life; that the father lived in the son's home at the time the deed was made; that the father did not have an independent adviser; that there was no consideration for the deed; and that it took practically all of the father's property.

In view of this record we believe the lower court was right in setting aside the deed. It necessarily follows that the judgment must be and it is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.