WALTER THORNE et al., appellees, v. EVERETT REISER et ux., appellants.

No. 48362.

(Reported in 60 N.W.2d 784)

124

November 17, 1953.

Kepford, Balch & Kepford, of Waterloo, for appellants.

Geiser, Donohue & Wilkins, of New Hampton, for appellees.

Smith, J.—Sadie M. Reiser, a widow, seventy years old and childless, on February 2, 1952, executed a warranty deed of her eighty-acre farm to defendants (husband and wife) "as joint tenants and not as tenants in common." At the same time the parties signed an agreement which provided in part as follows:

"Whereas, the said Sadie Reiser, party of the first part, having now arrived at an advanced age in life, desires the parties of the second part [defendants herein] to rent or sell their farm and come to her home and live with and care for her so that she can

be comfortable the remainder of her life, and to that end has requested of the second parties to so make arrangements for same; and

"WHEREAS, it is the desire of the parties of the second part * * * to comply with [her] wishes and [they] are now in the process of renting their said farm and home for the purpose of moving to the home of the first party and caring for her during the rest of her natural life;

"Now THEREFORE, it is agreed by and between parties hereto that in consideration of the second parties moving from their farm and home and residing with the said party of the first part, the said party * * * is this date executing to the parties of the second part a warranty deed conveying to them free and clear of all encumbrances the following described real estate: * * *."

The instrument further recited that the deed was the same day placed in escrow to be held until grantor's death "at which time the said deed shall be turned over to the parties of the second part for proper recording" and that it "may not be recalled" by grantor if grantees "shall adequately furnish food, clothing, and lodging" for grantor "and shall see to it that she is comfortably cared for during the rest of her natural life"; also that the "care and maintenance" to be furnished "shall consist of all medical care during her lifetime with the exception of the expense of her last illness and funeral expenses which will be paid for out of the insurance proceeds * * * as well as the sale of her bank stock and/or any checking or savings account which is likewise being disposed of by will at this time."

The contract also provided defendants would have the income from, and pay all expenses for the care and preservation of, the farm "from and after the date of this contract."

The will, executed contemporaneously, gave defendants "all of my personal household belongings together with any and all personal property located on the premises upon which I now reside"; and gave plaintiffs Hazel Knapp and Frances Leone any insurance money, bank stock and bank accounts remaining after payment of funeral, last illness and administration expenses and all just claims against the estate. There was no residuary clause. Defendant Everett Reiser was named sole executor without bond

and with direction to employ the escrow agent, who drew the papers, as attorney for the estate.

Mrs. Sadie Reiser was burned to death while alone in her home. Her body was found the morning of April 18, 1952. The escrow agent delivered the deed to defendants April 21. The present suit was thereafter commenced by plaintiffs, who are shown to be decedent's only heirs. Defendant Everett is a nephew of her deceased husband.

The trial court correctly summarized the petition as tendering these issues: Improper delivery of deed; nonperformance of condition precedent by defendants and consequent failure of consideration; undue influence and confidential relationship; and a request for account of rentals. The court disposed of the request for accounting as there was no testimony with reference to rentals, and pointed out that such accounting could be taken care of in another proceeding.

With reference to the hasty delivery of the deed after grantor's death, the court held the escrow agent should have made inquiry as to whether defendants had performed the conditions precedent, but that his failure so to do was without prejudice to either party since the deed may, upon proper showing, be set aside with the same legal effect as though it had not been delivered.

The court then stated the *principal* issues to be the questions of confidential relationship and the sufficiency of the showing of performance by defendants; and in effect held against defendants on both. The formal judgment and decree in favor of plaintiffs, however, was expressly based on insufficient performance by defendants "to entitle them to the delivery of the deed." The deed was set aside and canceled.

I. We are confronted at the outset by a situation becoming —or unfortunately already become—all too frequent, viz., failure to comply with rule 340, R.C.P. A motion to dismiss was filed June 3, 1953, six days after the filing of the printed record.

We recently sustained a motion to dismiss in a somewhat similar case, Lange v. Myers, 244 Iowa 1316, 60 N.W.2d 526. The disregard of our rules was no worse in that case than is the situation here. However, a motion to dismiss was made at an earlier stage so that we were able, by sustaining it, to forestall

and prevent the printing of the record. The problem here is more complex and distressing. The record was already printed and filed before our attention was called to the matter.

The trial court realized the objectionable nature of the situation and pointed out: "A comparison of the [typewritten] abstract with the reporter's transcript leads the court to believe that from 75 to 90 per cent of the transcript has been copied verbatim in question-and-answer form into the abstract of record." The ruling settling the record (dated April 29) states: "This situation was called to the attention of counsel for appellants on or about April 15, 1953, who have indicated that they believe that their case cannot be *fully* and *properly* submitted to the Supreme Court in any more condensed form." (Italics supplied)

This "belief" is itself incredible. The testimony of defendant Everett Reiser, alone, extends from printed page 260 to page 390, practically 130 pages of unabstracted testimony. The part reduced to narrative form occupies only *one* page and merely establishes details almost entirely unessential to the appeal. The testimony of the other defendant covers 59 pages, 58 of them in question-and-answer form.

These examples fairly illustrate most of the testimony as it appears in the record. Such "abstracting" contributes neither to the "full" nor to the "proper" presentation of appellants' case.

The trial court reluctantly settled the record as filed (with some minor amendment) apparently as a practical choice of two evils, the other being that otherwise the case might not reach us for the fall term. In this we think he was wrong. However, we have decided not to sustain the motion to dismiss appeal but to lean heavily on the judgment of the trial court. This we are justified in doing when we are asked to pass de novo on a record that contains approximately 400 printed pages copied practically verbatim from the reporter's transcript. The trial court at least had .the advantage of hearing the testimony and seeing the witnesses. We may say further that were our decision in favor of defendants we would not hesitate to tax them with the cost of printing the 491-page record.

■ II. Defendants assign various "propositions relied on

for reversal." They complain first that plaintiffs were permitted to amend the petition and thereafter to prove plaintiffs' status as heirs of decedent, after plaintiffs had rested and a motion to dismiss had raised the question of their right to maintain the suit.

The decision was clearly within, and not an abuse of, the trial court's discretion and was in the interests of substantial justice. There was no error. Fair v. County of Ida, 204 Iowa 1046, 216 N.W. 952; Shultz v. Shultz, 224 Iowa 205, 210, 275 N.W. 562; Sullivan v. Sullivan, 244 Iowa 838, 842, 56 N.W.2d 910, 913.

III. Defendants next say the trial court erred in holding the escrow agent was under a duty to inquire before delivery of the deed as to the performance by defendants under the escrow agreement. We think the court correctly said such failure did not seriously prejudice either party since delivery and record of the deed did not affect the power of the court to cancel it upon a proper showing.

IV. It is contended the court erred in holding defendants incompetent, by reason of the "dead man statute" (section 622.4, Iowa Code, 1950), to testify as to their personal transactions with Mrs. Reiser. Defendants claim they were rendered competent because plaintiffs Knapp and Thorne had been examined and had testified as to certain communications between themselves and decedent, citing Code section 622.5.

Code section 622.4, so far as concerns the present case, provides: "No party to any action * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased * * *, against the * * * heir at law, * * * [or] assignee * * * of such deceased person * * *."

Code section 622.5 provides: "This prohibition shall not extend to any transaction * * * as to which any such * * * heir at law * * * [or] assignee * * * shall be examined on his own behalf * * *."

It will be seen that section 622.5 operates to lift the prohibition of section 622.4 *only* when the *same* "transaction or communication" is being inquired into as was testified to by the other party. The conversations plaintiffs testified to were no

part of the transaction defendants sought to relate between themselves and decedent. Possibly they might have excluded plaintiffs' testimony by invoking Code section 622.4 (see Benson v. Custer, 236 Iowa 345, 352, 17 N.W.2d 889) but they were not, by such testimony, themselves rendered competent as to their own transactions.

We find no case exactly in point as to the facts, but see Clarity v. Sheridan, 91 Iowa 304, 307, 308, 59 N.W. 52, which clearly holds that where a plaintiff testifies as to one transaction with decedent, defendant's right to testify is limited to the same transaction. See also language in 70 C. J., Witnesses, 360, 361, note 53: "* * * an interested witness is not rendered competent to testify as to transactions with a decedent merely because his adversary has been a witness in his own behalf, where such adversary did not testify to any such transactions", citing among other authorities, Chapman v. Chapman, 132 Iowa 5, 109 N.W. 300, and In re Estate of Brown, 92 Iowa 379, 385, et seq., 60 N.W. 659.

We think the language of the statute compels the interpretation we give it and that the court did not err in excluding defendants' testimony.

V. The remaining contentions urged by defendants relate to issues of fact: Did the evidence establish that there was a confidential relationship between decedent and defendants in which decedent was the dependent or servient party? If so, did defendants meet the heavy burden of proof thereby imposed upon them to show their transaction with decedent was free from the influence of such relationship? And second, was there shown such performance by defendants as to support the deed under the terms of the contract?

▮ The law concerning confidential relationships and their effect upon the transactions between the parties to them is too well-settled to require much discussion. Not the law but the facts trouble the courts in such cases. The trial court cites Woolwine v. Bryant, 244 Iowa 66, 54 N.W.2d 759, and Sours v. Colvin, 244 Iowa 40, 55 N.W.2d 462. In the Sours case we pointed out that such relationship is not restricted to any special or particular form. There may be no legal or family relation-

ship between the parties. The relationship nevertheless exists "when one has gained the confidence of the other and purports to act or advise with the other's interest in mind." Restatement of the Law of Trusts, section 2(b), page 8; Popejoy v. Eastburn, 241 Iowa 747, 757, 41 N.W.2d 764; 37 C. J. S., Fraud, section 2c(2), page 213, note 1; 17 C. J. S., Contracts, section 132.

■ There is ample evidence here that such relation existed between decedent and defendant Everett Reiser. It is shown by testimony of statements made by decedent, not objected to, and even to some extent by defendant Everett's own testimony.

This does not mean there was anything wrong or fraudulent in the relationship itself or that there was any misrepresentation or undue influence exercised by defendants. But the relationship, if shown to exist, casts upon the dominant party, before he can avail himself of any benefit growing out of the transaction between them, the burden of showing the contract "was fairly procured without undue influence or other circumstance tending to impeach its fairness", Curtis v. Armagast, 158 Iowa 507, 520 et seq., 138 N.W. 873, 878; the burden of proving his "compliance with equitable requisites", Stout v. Vesely, 228 Iowa 155, 157, 290 N.W. 116.

Decedent here had no independent advice. The attorney who drew the papers and became the escrow agent testified he acted as attorney for both and that each paid half his fee. There is no mention of any private conference between the attorney and decedent on the subject. His testimony, on the contrary, shows there was no such consultation between them.

We shall not do what appellants should have done: reduce the testimony to its essential content. We merely say we agree with the trial court's finding that a confidential relationship existed sufficient to cast on defendants the burden of showing their transaction with decedent was not the result of undue influence.

■ VI. Nor shall we attempt any extended review of the testimony regarding the extent of defendants' compliance with the conditions precedent which constituted the consideration for the deed. They were to move over to decedent's home and reside with her, "adequately furnish food, clothing and lodging" for

her and "see to it that she is comfortably cared for during the rest of her natural life."

Decedent lived almost eleven weeks after the contract was signed. The trial court said "it is practically admitted by defendants that their proof of performance depends upon the admissibility of" their testimony as to their personal transactions with decedent. The court also recognized the short period of time that elapsed before decedent's death "in and of itself" was not important.

Notwithstanding the comparatively short time and even taking into account defendants' testimony of personal transactions with decedent the court still found defendants had not "sufficiently overcome the evidence of plaintiffs on the question of performance."

We have held in Division IV that defendants were incompetent, under Code section 622.4, to testify as to their personal transactions with decedent. We therefore need not go so far as the trial court went. But disregarding such testimony of personal transactions we agree there is not sufficient showing of performance to entitle defendants to the benefits of the contract. They had not moved over to decedent's home where they could minister to her care and comfort. The record shows decedent was unhappy and upset by their failure to do so.

Defendants agree decedent had for some years been badly crippled, that she had to go to bed without removing certain parts of her clothing because she was unable to remove them without help and that she was unable to bathe or dress without assistance.

Her accidental death occurred while she was alone and without the care that might have averted the tragedy. We are convinced that apart from defendants' own testimony as to personal transactions there was no showing of substantial performance by them of the service contemplated by the contract as constituting the consideration for the deed.

VII. Plaintiffs' amended and substituted petition prayed for an accounting by defendants "for all income and rentals received from said real estate from the 2nd day of February, 1952." Defendants answer admitting possession since decedent's

death, that they have farmed a portion of the land, leased a portion, and have received all the rents and income since that time.

No evidence was offered with reference to the amount of rentals and income, nor, for that matter, to the amount of any expense defendants might recover to offset same if such accounting were ordered. We do not deem such accounting to have been waived by either plaintiffs or defendants, and the decree will be affirmed without prejudice to the rights of either to such · accounting.

With this slight modification the decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur.