ACTION REAL ESTATE CORPORA-
TION of Iowa City, Iowa, Appellee,

v.

Alfred J. BULECHEK and Catherine
Bulechek, Appellants.

No. 65228.

Supreme Court of Iowa.

Aug. 26, 1981.

John T. Nolan and Marc B. Moen of Lucas, Nolan, Bohanan & Moen, Iowa City, for appellants.

Bruce L. Walker of Phelan, Tucker, Boyle & Mullen, Iowa City, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK, and LARSON, JJ.

HARRIS, Justice.

This was an action to recover a real estate commission upon the sale of defendants' farm. Defendants counterclaimed on the basis of constructive fraud, breach of fiduciary duty, and wrongful instigation of suit. The jury found in favor of plaintiff. The trial court directed a verdict against the defendants on their counterclaim. We affirm.

Earl Hull, a broker licensed under chapter 117, The Code, who was associated with Action Real Estate, undertook the sale of defendants' farm. Upon listing the farm, defendant Al Bulechek mentioned four prospective buyers. One prospect was Donald Clausen, who eventually purchased the farm.

Although the evidence is conflicting, the jury could have believed plaintiff's testimony that Hull thoroughly explained the listing agreement to defendants and reviewed the document with them before they signed it. Defendants maintain that Hull failed to reveal to them that they had an option of reserving the four prospective buyers by a "reserve prospect" provision. They also claimed that Hull failed to explain other matters, including the meanings of the terms "best efforts" and "immediately forward," and failed to explain the commission to be paid or the method of withdrawing the listing. Al Bulechek did say that Hull made it clear the listing could be revoked at any time.

After listing the farm Al Bulechek chanced to meet Donald Clausen in a nearby community. Clausen had been told by someone else that the farm was for sale. The two discussed the sale of the farm and whether or not it was listed. Clausen later testified that Al Bulechek told him that he did not know if he could avoid paying the commission.

Clausen made no offer for the purchase of the farm at the time but did arrange to later visit the farm. After this meeting Mrs. Bulechek called Earl Hull and advised him that Al Bulechek had found someone who might be interested in the farm. She invited Hull to come to the farm immediately which Hull did, arriving before Clausen. Prior to Clausen's arrival Hull called another prospective buyer who came to the farm but left without making an offer.

Mr. and Mrs. Clausen arrived at the farm sometime later the same day and Hull helped show them around. Mr. Clausen

made an offer of $3000 per acre which was accepted by defendants. A few days later the parties assembled at the office of an attorney who had been recommended by Hull. A land contract was signed and Clausens wrote a $5000 earnest money check which was made payable to Action Real Estate Trust Account.

Thereafter defendants refused to pay any of the commission, prompting this suit and defendants' counterclaim.

I. At the close of the evidence the plaintiffs dictated a comprehensive motion for directed verdict on the counterclaim. Defendants believe there were 13 alternative grounds for the motion but we are unsure of the accuracy of this count. In some ways the grounds tended to be cumulative and plaintiff's counsel made no attempt to number the grounds while orally dictating the motion. In sustaining the motion for directed verdict the trial court said:

I sustain the motion on each and every count which is there—sustain the motion on Count I in which I feel there is insufficient evidence, too small to submit this to the jury. On Count II, on the proximate cause question, and on Count III, the damage question.

Defendants believe the trial court must be reversed for its failure to comply with Iowa R.Civ.P. 118 which provides: "A motion, or other matter involving separate grounds or parts, shall be disposed of by separate ruling on each and not sustained generally."

■ We are not inclined to reverse for noncompliance here. In the first place it would have been difficult to impossible for the trial court to fully comply with the rule because of the structure of the motion ruled upon. Even reading the transcript of the dictated motion we are unable to state with confidence the number of alternative grounds. It does not seem reasonable to reverse the trial court for a failure to untangle and separate the various grounds in the oral motion and comment upon them separately. Secondly, we think there was minimal compliance. *Oakleaf Country Club, Inc. v. Wilson*, 257 N.W.2d 739, 743

(Iowa 1977). The trial court's ruling on the motion, and its reasons, were apparent.

Defendant's first assignment is without merit.

■ II. The trial court refused defendants' request that the jury be instructed on the special duties that devolve on one acting in a fiduciary capacity. In *Miller v. Iowa Real Estate Com'n*, 274 N.W.2d 288, 292 (Iowa 1979), we explained: "Real estate brokers and salesman represent their clients in the capacity of agent. This is a fiduciary relationship which requires a high degree of honesty and trust between the parties." Opinions which detail the obligations of fiduciaries include *Stout v. Vesely*, 228 Iowa 155, 157, 290 N.W. 116, 118 (1940), and *Dawson v. National Life Insurance Company*, 176 Iowa 362, 377, 157 N.W. 929, 931 (1916).

The difficulty with defendants' position under this assignment is not with the rule but rather with the record. The Bulecheks' sole evidence which might support a claim of any fiduciary breach is on their disputed assertion that Hull failed to make disclosures and explanations prior to the listing. We believe the trial court was right in refusing the instruction because the fiduciary relationship did not exist at the time of the claimed omissions.

The general rule is that "a person is not ordinarily subject to a fiduciary duty in making terms as to compensation with a prospective principal." Restatement of Agency, Second, § 390E. We have long applied the same rule to real estate brokers. We refused to recognize a confidential relationship between a broker and a prospective seller prior to the listing in *Larson v. Thoma*, 143 Iowa 338, 343, 121 N.W. 1059, 1061 (1909).

■ Defendants also assign error in the trial court's refusal to instruct on what they called affirmative defenses. The trial court refused to inform the jury that (1) the law required plaintiff to exercise skill, care and diligence in performing the contract; (2) plaintiff was required to use "best efforts"

in the performance of the contract; (3) the owners were entitled to sell their own property; and (4) a penalty clause is not enforceable in Iowa. We again find no evidentiary support for the instructions.

Defendants cite *Kuehnle v. Schromen*, 258 Iowa 989, 993, 140 N.W.2d 188, 191 (1966), as authority for plaintiff's obligation to exercise skill, care and diligence in representing defendants. But there was no evidence that plaintiff or Hull did not exercise skill, care and diligence in connection with the sale of the farm. Neither is there any evidence that plaintiff, through Hull, failed to expend its best efforts to effectuate a sale. On the contrary the only evidence shows full compliance with the standard and prompt performance of the broker's obligations to effectuate a sale.

■ The same can be said of the defendants' separate requests for an instruction that a seller has the right to proceed independently with the sale of property. The rule is that, a

> ... listing contract having been furnished by [a broker] any language therein which is not clear will be construed most strongly or strictly against him. Moreover, a listing contract will not be construed to defeat the right of one to sell his own property, without liability for commission, if it will fairly bear a contrary construction. [Authority.]

*Estes v. Leibsohn*, 248 Iowa 1173, 1178–79, 35 N.W.2d 15, 18 (1957). The only evidence in this case is that the sellers did not themselves sell the farm. By their own testimony they enlisted and received the assistance of Hull in negotiating and closing the sale. Defendants admit that, at the time of the sale, they called Hull to the scene. They did not object when the earnest money check was made out to plaintiff.

■ Defendants also sought an instruction that liquidated damages clauses are unenforceable. *See* Wallace: *Promissory Liability Under Real Estate Brokerage Contracts*, 37 Iowa L.Rev. 350, 367 (1952). This instruction was also properly refused. Any prohibition against liquidated damages could have no application here where the sale was not by the owner, but by the realtor. *See generally Engel v. Vernon*, 215 N.W.2d 506, 516 (Iowa 1974).

It was not error for the trial court to refuse to instruct on defendants' various defenses.

■ III. Defendants counterclaimed, asserting they suffered "substantial distress, nervous tension, ensuing psychological neuritis with attendant pain and suffering." Another assignment challenges the trial court ruling which sustained plaintiff's motion in limine striking certain elements of the counterclaim. The assignment seeks to reach an apparently mistaken basis on which the trial court ruled in an evidentiary matter. We need not reach the assignment because defendants never made out a jury question on the counterclaim.

The elements of a tort claim for intentional infliction of severe emotional distress are set out in *Amsden v. Grinell Mutual Reinsurance Co.*, 203 N.W.2d 252, 255 (Iowa 1972). They include "outrageous conduct" and none appears in this record. Defendants can claim no error on the basis of the ruling regarding damages for a claim upon which they cannot recover.

■ IV. Finally, defendants challenge trial rulings by which another broker was allowed to recite his own business practices. The witness disclaimed knowledge of any existence of a practice that was common among local brokers but was nevertheless allowed to state his own. He described his manner of explaining a listing agreement to his prospective sellers. Defendants vigorously complained of the testimony, both because of the witness's admission that he had no knowledge of practices in other offices, and because the testimony related only the witness's own customs and usages. We think the evidence should have been excluded on both grounds. 25 C.J.S. *Customs and Usages* § 33c; 21 Am.Jur.2d, *Customs and Usages*, §§ 37 and 38. *Cf. Deane & Co. v. Everett*, 90 Iowa 242, 57 N.W. 874 (1894) (Testimony by wholesale merchants generally as to custom or usage rejected as evidence of custom or usage in sale of iron

safes specifically.); *Nelson v. Adams Co.*, 179 Iowa 586, 161 N.W. 645 (1917) (Testimony by employees of business similar to defendant's as to custom and usage of their business who did not know whether that custom or usage was common held insufficient to establish common custom or usage applicable to defendant's business.).

Although we agree with defendants that the evidence should not have been admitted we disagree that the trial court must be reversed because we think the error was harmless. It affirmatively appears there was no prejudice because the testimony related to contentions we have held to be unavailable to defendants. All of the challenged testimony addressed practices at the time of a listing. None of it described practices which had to do with the witness's relations with a real estate customer during the time a fiduciary relationship existed, that is, after the listing was undertaken. Standards for disclosure by a broker came into this case only because of defendants' contention, which we have rejected, that the fiduciary relationship existed between broker and seller prior to the listing. We need not speculate on the effect of such an error in a case where there was a showing that a broker breached some nonfiduciary duty existing at the time of a listing. Defendants here were not hurt by the erroneously admitted evidence because it did not reach their remaining theories of defense or plaintiff's theory of recovery.

AFFIRMED.