# IN THE COURT OF APPEALS OF IOWA

No. 23-1685
Filed October 2, 2024

BRADY GRIFFIN as Executor of the Estate of LOREN D. GRIFFIN, and the LOREN DOUGLAS GRIFFIN IRREVOCABLE LIVING TRUST, by Trustee, CURTIS GRIFFIN,
        Plaintiffs-Appellants,

vs.

NYLIFE SECURITIES, LLC, NEW YORK LIFE INSURANCE COMPANY, and MARLYN MCCLAIN,
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Jennifer Benson Bahr, Judge.

        Plaintiffs appeal the district court's order granting summary judgment in favor of defendants on plaintiffs' claims of breach of fiduciary duty, fraudulent non-disclosure, negligent misrepresentation/omission, constructive fraud, breach of contract, negligent supervision/respondeat superior, and punitive damages. **AFFIRMED.**

        Gail Boliver of Boliver Law Firm, Marshalltown, for appellants.

        Jesse Linebaugh and Rachel Yaggi of Faegre Drinker Biddle & Reath LLP, Des Moines, for appellees NYLIFE Securities, LLC and New York Life Insurance Company.

        Victoria H. Buter of Kutak Rock LLP, Omaha, Nebraska, for appellee Marlyn McClain.

        Heard by Schumacher, P.J., and Buller and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Plaintiffs Brady Griffin, as executor of the Estate of Loren D. Griffin, and the Loren Douglas Griffin Irrevocable Living Trust by trustee, Curtis Griffin (collectively, Griffin) appeal the district court's order granting summary judgment in favor of defendants NYLife Securities LLC, New York Life Insurance Company, and Marlyn McClain (collectively, NYLife) on Griffin's claims of breach of fiduciary duty, fraudulent non-disclosure, negligent misrepresentation/omission, constructive fraud, breach of contract, negligent supervision/respondeat superior, and punitive damages. Griffin challenges the court's application of the relevant statutes of limitations to bar several claims and contends the court erred in granting summary judgment on the remaining claims. Upon our review, we affirm.

## I. Background Facts and Proceedings

A reasonable fact finder viewing the evidence in the light most favorable to Griffin could find the following facts from the summary judgment record. Loren "Doug" Griffin was born in 1954.[1] He left high school to begin working in various capacities before settling into the trucking industry. In 1984, he was involved in a severe accident when the front axle of his truck broke, which left him permanently disabled and collecting disability benefits. In the late 1980s, he received a $750,000 settlement stemming from the accident. Around that time, Griffin's longtime tax attorney, Frank Pechacek, introduced Griffin to McClain, who was employed by NYLife as an agent and held licenses to sell insurance and securities.

---

[1] Griffin died during the pendency of this appeal. The supreme court granted Griffin's request to substitute Brady Griffin as Executor for the Estate of Loren D. Griffin.

In 1988, Griffin purchased whole life insurance policies for himself (with a death benefit of $100,000) and his wife, Etta (with a death benefit of $1.5 million).[2]

In 1990, Griffin answered a "Confidential Financial Questionnaire" about his financial goals. Under the section titled "Financial Goals/Priorities," Griffin marked "Money Accumulation," "Income Tax Reduction," "Cash for the family at death," and "Income for the family at death." Griffin stated his "most important financial goal" was "Estate and Financial Planning"; "Rec'd 500,000 in settlement." He answered the question, "Is there anything disturbing you about your present financial planning," as follows: "Wants security for family. Save more money. Reduce taxes as much as possible." Griffin reported a net worth of $782,500, which included farmland and trucking assets.

Griffin met with McClain approximately "once a year" "[j]ust [to] see how things were growing, if [his] investments were growing or not or make sure payments are getting made on the life insurance."[3] Griffin emphasized to McClain that he was "always trying to get out from having to pay tax."

Following Etta's death in 1994, Griffin received the policy's death benefit of approximately $1.5 million.[4] After discussions with McClain, Griffin took out five additional whole life policies for himself and his four children (with his Trust named

---

[2] At the time the policies were purchased, Etta requested a larger policy for herself. In hindsight, Griffin believed Etta knew "something was wrong with her and she didn't say." Griffin later learned Etta had cervical cancer, which she fought for several years before her death.

[3] In 2016, McClain began transitioning his business to another NYLife agent, Mike Hutchins. McClain last met with Griffin in February 2017.

[4] The evidence is conflicting regarding the proceeds, but Griffin's petition alleges "Griffin received approximately $1.2 million in life insurance proceeds following the death of his wife[, Etta]." But later, in his deposition, Griffin agreed the amount was "just over 1.5 million."

as the policies' owner).  In 1998 and 2000, he purchased three additional whole life policies for his new wife, Joni, and their two young children.  Griffin thought taking out insurance policies for his family members was "the thing to do, I guess." Griffin stated McClain "probably advised to take [policies] out with all [his] kids." He recalled McClain's reasoning, "I guess, for one thing for saving taxes on the money, it grows, death benefits if something ever happens, you know, to me."  In addition to tax advantages, Griffin believed the policies "would grow like an investment."  McClain received commissions from the sale of the policies.  Griffin, or the policyholder, owned the cash value of the policy, which was to accumulate as time progressed.

Griffin's financial situation was not stable, and over the years, he took out loans on all the policies for various reasons, including to help family members, fund several trucking businesses, pay household expenses, and pay policy premiums and loan interest.  When he took loans from the policies, Griffin understood interest would need to be paid on them.  He also knew the policy premiums had to be paid for the policies to remain in effect.  Eventually, many of Griffin's policies lapsed or were surrendered due to nonpayment, which resulted in tax penalties.

In March 2022, Griffin brought this action against NYLife.  He raised the following claims: (I) breach of fiduciary duty; (II) fraudulent non-disclosure; (III) negligent misrepresentation/omission; (IV) constructive fraud; (V) breach of contract; (VI) negligent supervision and respondeat superior[5]; (VII) violation of insurance trade practices; and (VIII) punitive damages.  Essentially, Griffin alleged

---

[5] This count was raised solely against NYLife, but all other counts were raised against both McClain and NYLife.

he had "virtually no understanding about investing, including the products which were sold to him: Whole Life Insurance Policies" and he "relied upon McClain [and NYLife] to recommend how to invest . . . money from . . . Griffin's accident funds and later his wife's life insurance proceeds".[6] Griffin also alleged NYLife advised him to purchase "high dollar policies on his children, including infants, for no other purpose but to enrich [NYLife] at the expense of Mr. Griffin and or his trust," until "2020[, when] everything collapsed because the outrageous premium payments on the multiple policies could no longer be made and the loans on the policies took the equity."

NYLife moved for summary judgment. The district court granted the motion as to counts I, II, IV, VI, and most of count V, finding the claims barred by the relevant statutes of limitations. The court then granted the motion as to the remaining claims, finding they failed as a matter of law. Griffin appeals.[7]

## II.    Standard of Review

We review summary judgment rulings for correction of legal error. *Morris v. Legends Fieldhouse Bar and Grill, LLC*, 958 N.W.2d 817, 821 (Iowa 2021). Summary judgment is proper if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "We review the district court ruling on any statutory interpretation issues presented in a motion for summary judgment for correction of errors at law." *Albaugh v. The Rsrv.*, 930 N.W.2d 676, 682 (Iowa 2019).

---

[6] Also, in the early 2000s, Griffin sold 217 acres of farmland for a profit of approximately $140,000, following construction of a nearby hog confinement.
[7] Griffin withdrew his claim under count VII alleging a violation of insurance trade practices but appeals the court's dismissal of the remaining claims.

## III.     Statute of Limitations

Griffin challenges the district court's determination that several of his claims were barred by the relevant statutes of limitations.  We address the contentions in turn.[8]

## A.     Breach of Fiduciary Duty (Count I)

The statute of limitations for this cause of action is five years.  *See* Iowa Code § 614.1(4) (2022); *Shams v. Hassan*, 905 N.W.2d 158, 164 (Iowa 2017). The discovery rule applies to a claim of breach of fiduciary duty.  *Shams*, 905 N.W.2d at 165 (Iowa 2017).  "[U]nder the discovery rule, the limitations period begins when a claimant has knowledge sufficient to put that person on inquiry notice."  *Id.* (alteration in original) (quoting *Kendall/Hunt Publ'g Co. v. Rowe*, 424 N.W.2d 235, 243 (Iowa 1988)).  In other words, the focus is not on when the conduct underlying the causes of action occurred; rather, the question is when the causes of action accrued.  *Skadburg v. Gately*, 911 N.W.2d 786, 792 (Iowa 2018).

Griffin's petition alleged McClain breached his fiduciary duties by failing to inform him: of "proper investments" and "alternatives to whole life insurance"; "that life insurance was not an investment"; and "that taking loans on the life insurance products was a danger to the policy and repayment as an increased premium payment would be required to sustain the policies."  Griffin alleged NYLife breached its fiduciary duties by failing to: investigate Griffin's insurance purchases and advise Griffin on his purchases; "properly supervise the sale[s] by McClain";

---

[8] Because we affirm the court's order on the statute-of-limitations grounds, we need not address NYLife's alternative grounds for granting summary judgment on these claims.  *See Kestel v. Kurzak*, 803 N.W.2d 870, 872 (Iowa Ct. App. 2011).

and "properly recommend the loans against the policies and or alternatives." On appeal, Griffin claims his "losses and the diminishment of his investments' value were not readily discernible to a reasonable person relying on his trusted advisors." Specifically, Griffin contends "[t]he only instance" NYLife acknowledged Griffin had "incurred losses was in 2020 when the policies lapsed, and he was presented with a 1099 statement reflecting over $130,000 in tax liability." Accordingly, Griffin claims "each premium, or 'loan' or financial misuse of Mainstay funds (to pay life insurance expenses)[9] were ongoing and unique torts that cumulatively caused the collapse of the policies," which was "not evident before 2020."

Between 1988 and 2000, Griffin purchased ten life insurance policies from NYLife through McClain. In 1994, Griffin received the death benefit on Etta's policy of approximately $1.5 million. But after that, Griffin took loans out from all the remaining policies. He began taking out loans on the policies in 1995. Griffin acknowledged, "They all got picked on." Griffin explained he took loans out when "something we were doing if I needed the money for or something." To acquire the loans, Griffin called McClain's office, specified the amount, and requested them to "prepare the paperwork, and presumably submit it." He remembered receiving checks for many of the loans, but he couldn't recall them all.

Griffin received statements showing the status of his policies. Griffin thought the policy premiums were to be paid by the dividends that were coming out of the policies, but he wasn't certain. However, he understood the premiums

---

9 As NYLife correctly points out, Griffin's petition did not challenge his mutual fund investments. In any event, Griffin acknowledged he received statements over the years showing policy premiums were paid by remittance.

had to be paid for the policies to remain in effect. And as noted, he was aware premiums were paid periodically by "remittance."

Griffin testified, when he could not pay the premiums or loan interest, they "didn't get paid." This is despite Griffin's receipt of correspondence stating "unpaid loan interest that is added to the policy's outstanding loan balance will reduce the policy's cash surrender value and death benefit" and "if the loan balance exceeds the cash value, your policy could lapse unless additional payments are made." Griffin also received letters warning if he surrendered the policies or allowed them to lapse, "there could be a taxable event where [he] would have to pay tax." On multiple occasions, Griffin received letters from NYLife providing notice that loan interest payments were overdue and he "may wish to consider repaying [his] loan as soon as it is convenient." NYLife further indicated, "By repaying it, you will be taking an important step toward restoring your policy's life insurance benefit and cash value."

Griffin acknowledged McClain talked to him to "see how things were growing, if my investments were growing or not or make sure payments are getting made on the life insurance." At one point, in 2014, Griffin learned one of the policies had "lapsed due to non-payment." Griffin paid approximately $61,000 to reinstate the policy. In 2015, Griffin received a statement showing the policy had an outstanding loan of $641,909.21, with $35,305.01 loan interest due, and a $59,019.72 cash value. On this issue, the district court found in part:

> While the Court recognizes the reality that it would have been difficult for a person not versed in insurance or securities matters to know at the outset of the policy purchases that they would not generate income as "investments," the fact that Griffin never received income or payouts despite maintaining the policies for

decades certainly should have put him on notice that the policies were not what he claims to have thought they were. Assuming that Griffin did wholeheartedly trust Defendants, there were many years' worth of financial indication that the arrangement and dealings with Defendants were not working in the manner that Plaintiffs contend was represented to them, including the fact that Griffin had to use loan proceeds to pay the monthly premiums. Again, while Griffin contends that he knew nothing of the loans or the financial state of the policies, the undisputed evidence shows that he received annual statements, which would have put him on inquiry notice. Further, Griffin testified that he knew that taking out loans would mean he would be required to pay them back with interest when he applied for the loans. Therefore, the Court finds that while Plaintiffs did not have inquiry notice at the time the policies were purchased, knowledge of the harms they now claim against McClain should have been apparent in exercise of reasonable care in the years subsequent to the purchases. The Court further finds that the alleged failures and harms committed by the Defendants are not separate or successive failures resulting in separate damages so the continuing wrong doctrine does not apply.

Griffin claims the court, in reaching its decision, "neglect[ed] the ongoing nature of fraudulent activity contrary to fiduciary duty law and continuous misconduct law." However, the record is undisputed that minimally, by the time a policy "lapsed due to non-payment" in 2014, Griffin was aware of the alleged breaches and knew he could have filed suit based on the alleged breaches. *See Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985) ("[T]he duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury. It is sufficient that the person be aware that a problem existed."). Thus, Griffin's breach of fiduciary duty claims had accrued by 2014. But Griffin did not file his petition until 2022, which was more than five years after the causes of action accrued. *See Shams*, 905 N.W.2d at 165; *Wild v. Willey*, No. 18-0172, 2019 WL 2314579, at *6 (Iowa Ct. App. Mar. 6, 2019) ("However, the record is

undisputed that, by mid-2008, Wild knew the third-party loan was unsecured and that the third parties failed to perform.").  We affirm on this issue.

## B.     Fraudulent Non-Disclosure (Count II)

This claim also has a five-year statute of limitations.  *See* Iowa Code § 614.1(4).  The discovery rule does not apply to a claim of fraudulent nondisclosure.  *Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 411 (Iowa 1993) ("Generally, if it is an action at law for money damages, [the discovery rule] does not apply.").  This claim "may arise if a party fails to disclose material information and the party had a duty to communicate that information."  *Reynolds v. Solon State Bank*, No. 07-0085, 2007 WL 4553648, at *5 (Iowa Ct. App. Dec. 28, 2007).  Fraudulent nondisclosure may occur "when one with superior knowledge, dealing with inexperienced persons who rely on him or her, purposely suppresses the truth respecting a material fact involved in the transaction."  *Kunkel Water & Elec., Inc. v. City of Prescott*, 347 N.W.2d 648, 653 (Iowa 1984).

Griffin's petition alleged "[w]hile the [fiduciary] relationship was ongoing from the mid-1990s to 2020," NYLife was aware Griffin "relied upon them to properly manage their money given their special circumstances—Mr. Griffin is disabled and the majority of his funds came from irreplaceable sources (injury funds and life insurance proceeds)" and they knew Griffin "had no ability to manage his own money," yet during that time, NYLife "concealed or failed to disclose the proper management of [Griffin's] money."  Griffin further alleged NYLife "intended to deceive [Griffin] by failing to disclose proper portfolio/money management on an ongoing basis until 2020."  According to Griffin, "[i]n this scenario, damages did not

accrue until 2020 when the policies began to collapse, signifying the commencement of the action."

The record is undisputed that Griffin's final two transactions with McClain took place in 2000, when he purchased life insurance policies for Joni Griffin and Brady Griffin. Griffin alleged in his petition that McClain breached a fiduciary duty by advising him to purchase life insurance policies for his family members, including young children, and he testified his complaint was "about Mr. McClain's recommendations of these policies throughout the '90s and 2000s." Because this claim is premised on alleged fraud attendant to a business transaction, *see Wright v. Brooke Grp. Ltd.*, 652 N.W.2d 159, 175 (Iowa 2002) (noting "Iowa cases applying a fraud theory have typically involved a business transaction between the parties"), Griffin's attempt to extend its accrual until 2020 is not supported by the record. Even if Griffin's loans on the policies could be considered business transactions, the evidence is undisputed he began taking loans on the policies in 1995, also beyond the statute of limitations. *See Emps. Mut. Cas. Co. v. Collins & Aikman Floor Coverings, Inc.*, No. 4:02-CV-30467, 2004 WL 840561, at *15 (S.D. Iowa Feb. 13, 2004) ("[A]n action for fraud accrues when the fraud is perpetrated or consummated."). As the district court observed, "there has not been any subsequently acquired knowledge that would trigger the disclosure duty." Finding no error, we affirm on this issue.

## C.    Constructive Fraud (Count IV)

The statute of limitations for this cause of action is five years. *See* Iowa Code § 614.1(4); *Hotchkiss v. Int'l Profit Assocs., Inc.*, No. 13-0755, 2014 WL 3511786, at *4 (Iowa Ct. App. July 16, 2014). The discovery rule applies, and the

claim "starts to accrue at the point the plaintiff discovers 'the fact of the injury and its cause.'" *Id.* (quoting *Hallett Const. Co. v. Meister*, 713 N.W.2d 225, 231 (Iowa 2006)). Constructive fraud is an equitable doctrine that

> arises from the very conception and existence of a fiduciary relation, and in every transaction in which the superior party obtains a possible benefit, equity raises a presumption against its validity and casts the burden of proving affirmatively its compliance with equitable requisites, upon the party receiving the possible benefit.

*Stout v. Vesely*, 290 N.W. 116, 117 (Iowa 1940). "[N]either actual dishonesty nor intent to deceive are required for a showing of constructive fraud." *Regal Ins. Co. v. Summit Guar. Corp.*, 324 N.W.2d 697, 703 (Iowa 1982). Similar to Count II, however, the claim is premised on the existence of a transaction. *See Stout*, 290 N.W. at 117 (analyzing the claim regarding a dependent father's act in deeding a farm to his caregiver son without consideration).

Griffin's petition alleged McClain and NYLife "negligently supplied improper information to the Plaintiffs"; "intended the improper information to deceive the Plaintiffs"; and "benefited from the improper information provided to the Plaintiffs." Griffin further alleged a fiduciary relationship between the parties, stating Griffin "acted in reliance upon the truth of Defendants' information and were justified in doing so." According to Griffin, "the mismanagement of [his] finances and the specific transactions . . . were ongoing" and therefore survived the statute of limitations.

In addressing this claim, the district court observed, "Because constructive fraud requires the existence of a transaction, the applicable analysis is much the same as that of Count II. The petition does not allege a specific transaction that is subject to constructive fraud, but it is presumed from the other claims and the facts

alleged that the transaction(s) at issue would be the insurance policies sales and/or the loan agreements." As noted above, Griffin purchased life insurance policies from McClain between 1988 and 2000, and he first began taking loans out on his policies in 1995. Griffin was aware the premiums were not being paid, and at times, he used loan proceeds to pay premiums. In other words, even if Griffin initially believed the policies were a good investment (particularly after receiving Etta's death benefit in 1994), he was aware the policies were not growing in value in the ensuing years, in large part due to his use of the "life insurance polic[ies] . . . as a source of funds." *See Hora v. Hora*, 5 N.W.3d 635, 650 (Iowa 2024), *as amended* (July 1, 2024) (noting the plaintiffs' "claim for fraud in count II against [the defendants] is premised on essentially the same actions underlying their breach of fiduciary claims"). We find no error in the court's conclusion that this claim is barred by the statute of limitations.

**D.    Negligent Supervision and Respondeat Superior (Count VI)**

The statute of limitations for this claim is two years. *See Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 43 (Iowa 2018). The limitations period began "once [Griffin was] placed on inquiry notice." *Id.* ("A party is placed on inquiry notice when a person gains sufficient knowledge of facts that would put that person on notice of the existence of a problem or potential problem." (citation omitted)). "The crux of a negligent-supervision claim is an employer's failure 'to exercise ordinary care in supervising the employment relationship so as to prevent the foreseeable misconduct of an employee from causing harm to others.'" *Id.* at 42 (quoting 27 Am. Jur. 2d *Employment Relationships* § 375, at 885 (2014)).

Griffin's petition alleged in part that NYLife "failed to properly supervise their agent (McClain) throughout the period of this action and, indeed profited from their failures to supervise through increased commissions from life insurance sales, securities sales, and interest on loans and other charges," in "non-compliance with securities laws and FINRA duties," and NYLife is "responsible for the actions committed by their agents in the scope of their employment."

We have detailed the relevant evidence dispelling this claim above in relation to Griffin's other claims. In short, a reasonable person who had taken out life insurance policies to "build[] cash value" and had subsequently taken out loans on the policies and was unable to make premium and loan interest payments would be placed on inquiry notice to discover whether the loans were accumulating value. *See Woodroffe v. Hasenclever*, 540 N.W.2d 45, 48 (Iowa 1995) ("[T]he statute of limitations begins to run when a plaintiff first becomes aware of facts that would prompt a reasonably prudent person to begin seeking information as to the problem and its cause." (citation omitted)); *Kestel*, 803 N.W.2d at 877 ("We agree with the district court that a reasonable person who was both aware of the abuse and aware of the injury would be placed on inquiry notice to discover the connection between the two."). Even if Griffin was unaware of an alleged injury at the time he purchased the policies or applied to withdraw loans, the undisputed record shows that he became aware of the status of the policies in the ensuing years, including that the policies were not producing income sufficient to pay the premiums; loan interest payments were overdue; and he was at risk of tax consequences for allowing policies to lapse. Here, there is no dispute Griffin was aware of facts prior to 2020 "that would prompt a reasonably prudent person to

begin seeking information as to the problem and its cause." *Kestel,* 803 N.W.2d at 877 (citation omitted). We affirm the district court's finding this claim is barred by the statute of limitations.

**IV.    Summary Judgment**

Griffin also challenges the district court's order granting summary judgment on his remaining claims. We address his claims in turn.

**A.    Negligent Misrepresentation/Omission (Count III)**

Griffin's petition alleged McClain and NYLife provided "false or concealed" information, including:

> (a) Life insurance was an investment.
> (b) Failed to disclose that the strategy of borrowing funds from one policy to pay the premiums on other policies could fail.
> (c) Failed to disclose all fees associated with the policies.
> (d) Failed to disclose or concealed the taxes incurred.
> (e) Failure to recommend a suitable financial portfolio.
> (f) Failure, by corporate defendants' to supervise the recommendations.

Griffin further claimed "[e]very investment decision regarding the investments to purchase, the amount invested into each product, and whether to borrow funds from one product to fund another was decided entirely by Mr. McClain and followed by Mr. Griffin"; McClain and NYLife "intended the information to influence [Griffin] in purchasing the recommended products"; Griffin "did not reject any recommendation made by Mr. McClain"; and "the negligently supplied information was a cause of [Griffin's] damages."

The supreme court has adopted section 552 of the Restatement (Second) of Torts "as a guideline for defining those persons who may recover against one who negligently supplies information for the guidance of others." *McCracken v.*

*Edward D. Jones & Co.*, 445 N.W.2d 375, 381–82 (Iowa Ct. App. 1989); *accord*

*Van Sickle Const. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 692 (Iowa

2010) ("A person who negligently supplies false information is liable for 'pecuniary

loss caused to [others] by their justifiable reliance upon the information.'" (quoting

Restatement (Second) of Torts § 552(1), at 126)).  This provision states, in relevant

part:

> One who, in the course of his business, profession, or other employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Dinsdale Constr., LLC v. Lumber Specialties, Ltd.*, 888 N.W.2d 644, 649–50 (Iowa

2016) (quoting Restatement (Second) of Torts § 552, at 126–27 (1977)).

"Only those who are 'in the business of supplying information to others' can

be liable for negligent misrepresentation."  *Pitts v. Farm Bureau Life Ins. Co.*, 818

N.W.2d 91, 111 (Iowa 2012) (citation omitted).  In determining whether a person

is in the business of supplying information to others, courts consider "whether the

person providing the information 'is manifestly aware of the use that the information

will be put, and intends to supply it for that purpose.'"  *Id.* at 111–12 (citation

omitted).  Relating to insurance producers, Iowa Code section 522B.11(7)(c)

provides:

> Notwithstanding the holding in *Pitts* . . . , an insurance producer, while acting within the scope and course of the license provided for by this chapter, is not in the business of supplying information to others unless the requirements of paragraph "a" relating to expanded duties and responsibilities are met.

Paragraph (a) states:

Unless an insurance producer holds oneself out as an insurance specialist, consultant, or counselor and receives compensation for consultation and advice apart from commissions paid by an insurer, the duties and responsibilities of an insurance producer are limited to those duties and responsibilities set forth in *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457 (Iowa 1984).

Iowa Code § 522B.11(7)(a).

On appeal, Griffin claims the court erred in its order denying his claim by failing to consider that the defendants were acting as "securities" professionals. Griffin points to McClain's Series 1 and 63 licenses, arguing "he was subject to FINRA Rules and securities laws and the law of negligent misrepresentation because he was acting as a financial advisor." Griffin further alleges NYLife, as a registered broker-dealer, was "also bound by these rules and laws." Contrary to Griffin's claim, we observe the court did address Griffin's contention that "McClain received a Series 1 and Series 63 license and those licenses subject McClain to certain duties." The court, however, found no evidence in the record indicating McClain or NYLife were in the business of supplying information:

Defendants assert that they are [not] in the business of supplying information so they cannot be held liable for negligent misrepresentation under Iowa's modification of Restatement (Second) of Torts § 552. . . . Regard[ing] McClain, Defendants cite to Iowa Code section 522B.11(7), which states that an insurance producer (which undisputedly includes McClain), when acting within the scope and course of the license provided for by the chapter, is not in the business of supplying information to others unless the produced holds themselves out as an insurance specialist, consultant, or counselor and receives compensation for consultation and advice apart from commission paid by an insurer. In resistance, Plaintiffs note that McClain received a Series 1 and Series 63 license and those licenses subject McClain to certain duties. It is unclear whether this statement is to infer that McClain was holding himself out to be some sort of specialist or consultant. It is immaterial though, as in selling whole life insurance, McClain was acting as an insurance producer under § 522B.11 and not selling securities.

Therefore, the Court finds that McClain was not in the business of supplying information and not able to be held liable under Count III.

NYLIFE Securities and New York Life Insurance argue that they did not make any statements or representations to Plaintiffs. They point to Plaintiff's Answer to Defendants' Interrogatory 4 in which Plaintiffs aver that neither NYLIFE Securities or New York Life Insurance made any statements or admissions relevant to the case to Plaintiffs. In response, Plaintiffs assert that Defendants made multiple misrepresentations and allude to the fact that McClain's sales were approved by Defendants constitutes a negligent omission. Section 552 of the Restatement (Second) of Torts requires a showing that a defendant who "supplies false information", which is an affirmative action. There is nothing in the section nor is there any case cited to suggest that Defendants' approval of the insurance sales is tantamount to a misrepresentation.

We agree Griffin has not raised a genuine issue of fact that McClain and NYLife "assumed a duty beyond the procurement of the coverage." *See 3140 LLC v. State Cent. Fin. Servs., Inc.*, No. 14-1602, 2016 WL 351425, at *8 (Iowa Ct. App. Jan. 27, 2016). McClain testified about his general examination of his clients' proof of insurance needs and medical qualifications derived from underwriting when selling whole life insurance policies.[10] McClain described Griffin's purchase of "several Whole Life Insurance Policies for himself and various family members." As McClain attested, "The only compensation I received in connection with the policies purchased by Mr. Griffin was the standard commission paid on these policies. I did not receive any additional compensation for additional work provided on the policies, such as facilitating the loans requested by Mr. Griffin." Further,

---

[10] According to McClain:
    A Whole Life Insurance Policy builds cash value. The cash value of the policy belongs to the policyholder . . . . The policyholder, and only the policyholder, can direct how the cash value of the policies is used. The policyholder also has sole discretion to take loans on a policy and use the loan proceeds how they wish.

McClain attested, "Specifically, I did not receive further commissions when Mr. Griffin took loans out on his policies."

We find no error in the court's determination that Griffin presented no evidence supporting a finding that either McClain or NYLife held itself out as an insurance specialist, consultant, or counselor, and received compensation for consultation and advice apart from commissions paid by NYLife.  And like the district court, we find the fact that McClain held securities licenses immaterial to his sale of whole life insurance policies to Griffin.[11]  We affirm on this issue.

## B.    Breach of Contract (Count V)

Griffin's petition alleged the existence of "customer agreements" between the parties that were "paid for" by Griffin, in which McClain and NYLife "agreed, among other things, to handle the investment account of [Griffin] in a suitable and appropriate manner."  Griffin alleged McClain and NYLife breached their duties by:

> (a) Failing to provide a suitable or proper investment portfolio for the Plaintiffs;
> (b) Failing to provide proper financial products for a long-term portfolio with income to supplement Mr. Griffin's income;
> (c) Failing to supervise Mr. McClain for the sale of life products;
> (d) Failing to supervise Mr. McClain for the sale of securities products;
> (e) Failing to supervise Mr. McClain in recommending the advance of loans against the life policies; and;
> (f) Failing to carry out his contractual duties with "good faith."

At the outset, we observe the district court found "most" of Griffin's breach-of-contract claim barred by the statute of limitations—a determination Griffin does

---

[11] Indeed, as McClain testified, "[Securities are] not as safe as life insurance . . . . Doug [Griffin] had a concern with creditors and lawsuits, and so securities and other financial means are susceptible to that," but "life insurance is exempt from creditors and lawsuits after you have the policy for at least a year or two."

not challenge on appeal. Rather, Griffin contends the court "misapprehended the existence of a contract between the parties." Although Griffin does not allege the existence of a written contract, Griffin points to McClain's relationship as Griffin's "registered representative" as "creat[ing] a contract," arguing "[t]he contracts were breached because the overarching goal was to provide [Griffin], upon Etta's death, with financial planning and investment services." To support this claim, Griffin points to Griffin's 1990 "Confidential Financial Questionnaire"; a 1994 letter from McClain to NYLife underwriting stating Griffin was investing Etta's policy death benefits; and Griffin's 2019 account statements noting McClain as "Your Investment Professional." The district court addressed this claim as follows:

> Defendants argue that Plaintiffs' breach-of-contract claim must fail because Plaintiffs have not provided a contract to support their claim. Plaintiffs assert that the financial questionnaire, the life insurance policies, a letter sent by McClain to underwriting at New York Life stating that Griffin had chosen to use a significant amount of the money he received from his wife Etta's life insurance proceeds to fund further New York Life products constitute a "contract." In the resistance, Plaintiffs also point to customer agreements they assert were part of the transactions.
>
> To prove a breach of contract, the Plaintiffs are required to show 1) the existence of a contract; 2) the terms and conditions of the contract; 3) that is has performed all the terms and conditions required under the contract; 4) the defendant's breach of the contract in some particular way; and 5) that plaintiff has suffered damages as a result of the breach. Assuming that the documents identified by Plaintiffs as contracts are, in fact, contracts and legally binding, Plaintiffs have failed to identify terms in these contracts that would form the basis of their breach claim. While a party need not prove a claim entirely on summary judgment, merely hinting that a document may require a party to perform an obligation is insufficient to generate a fact question necessary to survive summary judgment. As courts have stated, "summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a [nonmoving] party must show what evidence it has that would convince a trier of fact to accept its version of the events." Without a specific contract with specific terms present, summary judgment for the Defendants is proper.

(Internal citations omitted.)  Finding no error in the court's ruling, we affirm on this issue.

**C.      Remaining Claims (Counts VII and VIII)**

As noted, Griffin withdrew his claim under count VII alleging a violation of insurance trade practices.  *See Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 255 (Iowa 2012) (observing Iowa does not recognize a private right of action for violation of insurance trade practices).  And because we have affirmed the court's denial of Griffin's claims, we concur in the court's finding that Griffin is not entitled to punitive damages.  *See Larew v. Hope L. Firm, P.L.C.*, 977 N.W.2d 47, 63 (Iowa 2022).

**V.      Conclusion**

We affirm the district court's order granting NYLife's motion for summary judgment and the dismissal of Griffin's petition.

**AFFIRMED.**